| | |
|---|---|
| **OUTTEN & GOLDEN LLP**<br>Adam T. Klein<br>Ossai Miazad<br>Lewis Steel<br>Cheryl-Lyn Bentley<br>Christopher McNerney<br>685 Third Avenue, 25th Floor<br>New York, New York 10017<br><br>*\*Pro hac vice* motion forthcoming | **NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**<br>Sherrilyn Ifill<br>Samuel Spital<br>40 Rector Street, 5th Floor<br>New York, New York 10006<br><br>Coty Montag\*<br>1444 I Street NW, 10th Floor<br>Washington, DC 20005 |

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARNELLA TIMES and ERVING SMITH, on behalf of themselves and all others similarly situated, and THE FORTUNE SOCIETY, INC.<br><br>                    Plaintiffs,<br><br>           v.<br><br>TARGET CORPORATION,<br><br>                    Defendant. | **CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Carnella Times and Erving Smith, individually and on behalf of all others similarly situated ("Named Plaintiffs"), and The Fortune Society, Inc. ("Organizational Plaintiff Fortune" or "Fortune") (collectively, "Plaintiffs") by their attorneys, bring the following allegations against Defendant Target Corporation ("Target" or "Defendant"):

### SUMMARY OF CLAIMS

1. In this class action complaint, Plaintiffs allege that Target—one of the largest private retail corporations in the United States, which owns and operates over 1800 stores nationwide and employs over 300,000 workers annually—has in the past and continues to utilize a job applicant screening process that systematically eliminates thousands of qualified African

Americans and Latinos from jobs based on their race or national origin in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*.  At issue is Target's use of criminal background checks to screen applicants for prior convictions, many of which are unrelated to the job sought by the applicant or occurred long before the individual's application for employment at Target to the detriment of thousands of African American and Latino job applicants.  Target has also systematically eliminated from consideration job applicants who it contends "falsified" their criminal histories in their applications without probing the nature of any discrepancy between the application and the result of the criminal history search.

2. The jobs at issue in this case are hourly and entry-level non-exempt positions.  They include jobs such as food service workers, stockers, cashiers, and cart attendants.  Such jobs could be a source of stable employment for many individuals who lack formal education or technical job skills and who are trying to get their lives back on track after some interaction with the criminal justice system.  Such stable employment has proven to be important in preventing recidivism.

3. Target's hiring practices and procedures are unlawful under Title VII because they have a significant adverse impact upon African Americans and Latinos (who, because of systemic discrimination in the criminal justice system are arrested and incarcerated at rates substantially higher than whites), and because these practices are neither job-related nor consistent with business necessity.

**FACTUAL BACKGROUND**

4. Target has performed criminal background checks on all its applicants for employment in its U.S.-based stores since 2001.

5. Since 2001, Target has revised various aspects of its criteria for excluding applicants with criminal background histories ("Adjudication Guidelines").  Target has also used

2

various third-party vendors to perform its criminal background checks. However, important aspects of Target's background check policies, practices, and procedures have remained unchanged, including its use of a centralized background check process designed and directed by its management team headquartered in Minneapolis, Minnesota, and its use of human relations and managerial personnel who apply these policies and procedures to all U.S-based Target stores and applicants for employment.

6. Target's hiring process begins with two initial interviews. Target's interviewers utilize a standard set of questions based on interview guides provided by Target's headquarters. After the second interview, the Target interviewer may extend a conditional offer of employment and inform the applicant that the offer is contingent upon the results of a criminal record check. The applicant is then required to fill out a previous conviction questionnaire form, which requests information about the applicant's criminal record. Target then has a third-party vendor conduct a criminal background check on the applicant.

7. The third-party vendor applies the Target mandated Adjudication Guidelines to the applicant's criminal record to determine if the applicant should be excluded from employment or if the applicant's record requires further review.

8. Pursuant to Target's uniform Adjudication Guidelines, Target mandates automatic rejection of applicants within broad categories of certain criminal convictions that may involve violence, theft, or controlled substances—whether misdemeanor or felony—within the past seven years.

9. Target's Adjudication Guidelines also mandate that applicants must be rejected from employment for what Target identifies as an inaccurate disclosure of prior criminal convictions; Target labels such inaccuracies, "falsifications" (Target's "Falsification Policy").

10. When the third-party vendor applies Target's Adjudication Guidelines, three

determinations are possible: (1) the applicant is eligible for employment; (2) the applicant is ineligible; or (3) the applicant needs further review by Target's Team Member Screening Team ("Screening Team").

11. If the applicant is deemed ineligible pursuant to Target's Adjudication Guidelines, the third-party vendor notifies the applicant in writing by sending the applicant the required Fair Credit Reporting Act ("FCRA") notices with a copy of the background check.

12. If the vendor determines that the criminal history requires further review pursuant to Target's Adjudication Guidelines, it is forwarded to Human Resources at Target headquarters. The Screening Team assesses the applicants who require further review. Target's policies allow members of the Screening Team to use their discretion rather than apply any objective or validated measures to assess applications.

13. Target's Screening Process, which consists of the Adjudication Guidelines, the Falsification Policy, and the review by the Screening Team, imported the racial and ethnic disparities that exist in the criminal justice system into the employment process, thereby multiplying the negative impact on African American and Latino job applicants.

## CLASS DEFINITION

14. Plaintiffs bring this case as a class action under Federal Rules of Civil Procedure 23(a) and (b), on behalf of the following class:

> All African American and Latino applicants for employment in a non-exempt position at a U.S.-based retail Target store ("Target Stores Job"), who, from May 11, 2006, to the date of preliminary approval of the proposed settlement, were denied an employment opportunity in a Target Stores Job based on a final adjudication on a pre-employment background check that did not clear the applicant to proceed based on their criminal history ("the Class").

## JURISDICTION AND VENUE

15. The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4), as this claim

arises under the laws of the United States, and under § 717 of Title VII, 42 U.S.C. § 2000e *et seq*.

16. Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f)(3), because Organizational Plaintiff Fortune has members residing within the district and is incorporated in the State of New York with its main offices in Queens, New York and additional facilities in West Harlem. Additionally, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because part of the events or omissions giving rise to the claims occurred in this district and Defendant conducts business within this district.

### EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

17. On March 6, 2007, Plaintiff Carnella Times (formerly Carnella McDade) filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") based on Target's denial of employment. Ms. Times's Charge was originally filed with the EEOC's Boston office and was transferred to the Chicago office in 2009.

18. On August 4, 2011, the EEOC issued an adverse finding against Target, finding reasonable cause to believe that through the application of its background check policy, Target had discriminated against a class of applicants because of their race and national origin by denying them employment and/or refusing to consider them for employment.

19. On September 14, 2015, after years of investigation, the EEOC issued Plaintiff Times a Notice of Right to Sue.

20. On December 10, 2015, Ms. Times entered into a tolling agreement with Defendant on behalf of herself and other potential plaintiffs who might have claims piggybacking on her EEOC Charge to toll the statute of limitations of Title VII claims during the period from November 26, 2015 until the date of final approval of any settlement the parties reach.

21. This action was filed on April 5, 2018, within the required time limits.

22. Any and all other prerequisites to the filing of this lawsuit have been met.

## PARTIES

*Plaintiff Carnella Times*

23. Plaintiff Times is a 47-year old African American female resident of Hartford, Connecticut.

24. In August 2006, Plaintiff Times applied to an overnight stocker position in a new Target store located in South Windsor, Connecticut.

25. Plaintiff Times was qualified for the position based on the job description and her prior experience.

26. During her application process, Plaintiff Times informed Target of her relevant work experience as a merchandise stocker at another large retailer.

27. Plaintiff Times informed Target personnel that she had a misdemeanor conviction from 1996. Target representatives conducted several interviews with her and extended a conditional job offer for a stocker position contingent on the results of her criminal background check.

28. A week later, in or about August 2006, Plaintiff Times received a letter from Target stating that it had conducted a criminal background check. She was provided with a copy of the background report, which showed that she had two 10-year old misdemeanor convictions from 1996.

29. Later, in or about August 2006, Target sent Plaintiff Times a second letter stating that it would not offer her employment "in whole or in part" due to the information in the consumer report. After receiving this letter, Plaintiff Times spoke with a Target HR representative of the Connecticut store where she applied, who confirmed that the letter was a withdrawal of Target's offer of employment.

*Plaintiff Erving Smith*

30. Plaintiff Erving Smith is a 40-year old African American male resident of Smyrna, Georgia.

31. In or about early 2014, Plaintiff Smith applied to a stocker position in a Target store located in Pittsburgh, Pennsylvania.

32. Plaintiff Smith was qualified for the position based on the job description and his prior experience.

33. During his application process, Plaintiff Smith informed Target of his relevant work experience as a stocker at another large retailer.

34. Plaintiff Smith informed Target personnel that he had a drug-related felony conviction from 2004. Target representatives conducted two interviews with him and extended a conditional job offer for a stocker position contingent on the results of his criminal background check.

35. Approximately two weeks later, Plaintiff Smith received a phone call from the Target Store Manager where he applied stating that his conditional job offer was rescinded due to the results of his criminal background check.

36. Approximately several weeks after the phone call from Target's manager, Plaintiff Smith received a letter from Target stating that it had obtained a consumer report on his background and that it would not offer him employment "in whole or in part" due to the information in the consumer report.

*Organizational Plaintiff The Fortune Society, Inc.*

37. Founded in 1967, Organizational Plaintiff Fortune is a New York not-for-profit community-based organization headquartered in Queens, New York, with a mission to support the successful reentry of formerly incarcerated individuals and promote alternatives to

incarceration, thus strengthening the fabric of our communities. At least half of Fortune's staff are formerly incarcerated individuals, and its Board of Directors is comprised of at least one-third formerly incarcerated individuals.

38. Fortune provides holistic services to formerly incarcerated people, serving approximately 7,000 individuals impacted by the justice system each year at three New York City locations. Fortune's employment services program is germane to its mission of expanding career pathways for people with justice system involvement and is designed to equip formerly incarcerated jobseekers with the skills necessary to obtain employment and thrive in the workplace through job readiness workshops, sector-based skills trainings, mentoring, and job placement assistance and retention services. Fortune files this action individually as a distinguished advocacy organization and on behalf of its formerly incarcerated clients, who are also members of the proposed class. Target's hiring policies and Adjudication Guidelines affect many of Fortune's clients who apply and are denied employment or are deterred from applying because of Target's policies.

39. Target's hiring policies and Adjudication Guidelines impede Fortune's ability to carry out its mission to advance the employment attainment of the formerly incarcerated population in New York and, more broadly, throughout the United States. Fortune has expended significant time and expense in employment and education programming for its clients with criminal background histories.

***Defendant Target***

40. Target is a retail establishment with approximately 1,800 stores across the United States, including in the state of New York, and is headquartered in Minneapolis, Minnesota. Target is the second largest discount retailer in the country.

41. At all relevant times, Target has been an employer as defined by Title VII of the

Civil Rights Act.

42. Target, by soliciting, conducting, and transacting business in the state of New York, engages in continuous, permanent, and substantial activity within the state.

## STATEMENT OF CLAIMS

43. At all times relevant to this Complaint, Target utilized a uniform procedure for hiring non-exempt employees in all of its stores in the United States. At its headquarters, Target developed a standardized set of procedures that each store in the United States utilizes, including the Adjudication Criteria, the Falsification Policy, and the Screening Team review process (described throughout and collectively, "Target's Screening Process").

44. Target's Screening Process screened out individuals who would be eligible for employment according to any valid and fair system.

45. At all times relevant to this Complaint, African Americans and Latinos were arrested and convicted of crimes at more than double the rates of whites.[1] As a result of Target's Screening Process, each component individually and collectively as described above, had and continues to have a significant and detrimental impact on them, based on their race and national origin, as compared to white applicants.

46. Any selection device that has a disparate impact must have a "manifest relationship to the employment in question." *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971). It must "be shown to be necessary to safe and efficient job performance to survive a Title VII challenge." *Dothard v. Rawlinson*, 433 U.S. 321, 331 n. 14 (1977). A criminal record exclusion is valid only when it "operates to effectively link specific criminal conduct, and its dangers, with the risks inherent in the duties of a particular position." *EEOC Enforcement*

---

[1] *See* United States Department of Justice. Office of Justice Programs. Bureau of Justice Statistics. National Prisoner Statistics, 1978-2014.

*Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964*, at 14 (April 25, 2012).

47. Target cannot show business necessity with respect to its blanket exclusions found in its Adjudication Guidelines, nor can it show business necessity for excluding applicants pursuant to its Falsification Policy and Screening Team review process.

48. Target's exclusions in its Adjudication Guidelines (including exclusion for controlled substance felonies) bear no relation to the employment in question—entry level jobs like food service workers, stockers, cashiers, and cart attendants.

49. Having a conviction (whether disclosed or not) is not an accurate proxy for determining whether an applicant would be able to perform the duties of the job. There are no reliable studies or empirical data to suggest that applicants with criminal records are more likely to engage in terminable offenses.[2]

50. Target excluded many applicants from employment for various felony convictions (including controlled substance felonies, assault and battery, forgery, fraud, and identify theft). Applicants were also excluded from employment based on various misdemeanor convictions. Even the most petty offenses could lead to an applicant's exclusion if the applicant failed to disclose his or her conviction history to Target's satisfaction.

51. Target's Screening Process is far too over-inclusive to meet the standards of job-relatedness and consistency with business necessity.

52. In the limited places where the Adjudication Guidelines allows for further review (as opposed to automatic exclusion), Target's Screening Team applies *ad hoc* standards,

---

[2] *See, e.g.,* Ian B. Petersen, *Toward True Fair-Chance Hiring: Balancing Stakeholder Interests and Reality in Regulating Criminal Background Checks*, 94 Tex. L. Rev. 175, 187-88 (2015)

unguided by professional principles.

53. Upon information and belief, Target does not have a process or policy to determine whether individuals convicted of crimes many years ago had made positive changes in their lives such that they no longer posed a risk to others. Target lacked a systematized process to enable applicants to provide proof of rehabilitation, such as documentation of successful participation in drug treatment programs, educational achievements or relevant employment, or to submit certificates of relief from disabilities, which in many states create a presumption of rehabilitation.

54. There are less discriminatory alternatives that would have better achieved Target's legitimate hiring interests. As discussed above, the Screening Process created significant barriers to employment that excluded many properly qualified persons, including disproportionate numbers of African American and Latino applicants. There are less discriminatory alternatives that would have better achieved Target's legitimate hiring interests in protecting the public and avoiding workplace misconduct.

55. Less discriminatory alternatives include, but are not limited to: (1) considering all applicants with a record of an arrest over one year old at the time of application and no record of criminal conviction, as well as those applicants with juvenile adjudications or adult convictions that have been expunged or sealed; (2) considering all applicants with a record of conviction for a crime that by its nature does not pose a legitimate threat to the public safety or risk of workplace misconduct; (3) eliminating the practice of denying applicants based on discrepancies in their self-disclosure; and (4) giving each individual tagged as "needs review" a meaningful opportunity to demonstrate that he or she does not present a current threat, including providing evidence of rehabilitation, an explanation of events leading to the conviction, or information regarding other mitigating factors.

## CLASS ACTION ALLEGATIONS

56. Named Plaintiffs, and those similarly situated, are all members of the Class, which includes all African American and Latino applicants who sought employment with Target from 2006 through the present, and were denied employment based on application of Target's Adjudication Guidelines and/or review by Target's Screening Team.

57. The members of the Class are so numerous that joinder of all of them is impracticable. Target is a large retail employer with roughly 1,800 stores across the country, including many in New York. The number of job applicants harmed by Target's violations of the law is far greater than feasibly could be addressed through joinder. The precise number is uniquely within Target's possession, and Class Members may be notified of the pendency of this action by mailed notice.

58. There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members. Target had a *single, uniform* criminal background check procedure that was used for *all* job applicants. Common questions include, but are not limited to:

(1) Whether it was Defendant's policy and practice to exclude job applicants with criminal histories who have never been convicted or who should have been eligible for employment based on valid factors assessing legitimate threat to public safety or risk of workplace misconduct;

(2) Whether Defendant's policy and practice to exclude job applicants based on criminal history had a discriminatory disparate impact on African American and Latino applicants;

(3) Whether Defendant's policy and practice to exclude job applicants based on their criminal history records is job-related and consistent with business necessity;

(4) Whether there was a less discriminatory policy and practice that would have met Defendant's legitimate needs; and

(5) What equitable and injunctive relief for the Class is warranted.

59.     Named Plaintiffs' claims are typical of the claims of the Class: (1) Each Plaintiff applied for a job with Target within the relevant time period; (2) Each was processed through the same application procedure; (3) Each was subjected to the same screening devices and hiring processes; (4) Each was denied the position; and (5) Each has the same discrimination claim based on disparate impact.  All of these claims are shared by each and every class member.

60.     Named Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have no conflict with one another or any class member. Plaintiffs are committed to the goal of having Target revise its hiring policy and practice to eliminate its discriminatory impact on African American and Latino applicants.

61.     Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

62.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b) due to: (1) the risk of inconsistent or varying adjudications with respect to individual class members through the prosecution of separate actions; (2) Defendant's refusal to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate respecting the class as a whole; and/or (3) the predominance of questions of law and/or fact common to class members over any questions affecting only individual members, and the superiority of a class action to other methods for fairly and efficiently adjudicating this controversy.

**CLAIM FOR RELIEF**
**Disparate Impact Discrimination**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e *et seq.***
*(On Behalf of All Plaintiffs and the Class)*

63.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

64.     Named Plaintiffs bring this claim on their own behalf and on behalf of the Class.

65. Organizational Plaintiff Fortune brings this claim on its own behalf and that of its clients who are also members of the putative Class.

66. Plaintiff Times timely filed a charge with the EEOC, with class wide allegations, and has thus exhausted the administrative remedies.

67. Defendant's policy and practice of using employment screens that exclude applicants with arrest or irrelevant conviction records from obtaining employment opportunities, has harmed, and continues to harm, Plaintiffs, and constitutes unlawful discrimination on the basis of race, ethnicity, color, and/or national origin in violation of 42 U.S.C. §§ 2000e *et seq.*

68. Defendant's policy and practice of using employment screens that exclude applicants with arrest or irrelevant conviction records from obtaining employment opportunities had a disparate impact on African Americans and Latinos and is neither job related nor consistent with business necessity. Even if Defendant's policy and practice of denying employment opportunities based on applicants' criminal history records could be justified by business necessity, a less discriminatory alternative exists that would have equally served any legitimate purpose.

69. Plaintiffs and the Class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. The practices identified above have been in place since at least 2006, and Target continues the alleged discriminatory hiring practices today. Plaintiffs and the Class they seek to represent are now suffering, and will continue to suffer, irreparable injury from Defendant's discriminatory acts and omissions.

70. Defendant's conduct has caused, and continues to cause, Plaintiffs and the members of the Class substantial losses in earnings and other employment benefits.

71. Organizational Plaintiff Fortune has been harmed, as it has been forced to divert

resources from its primary advocacy projects in order to assist its members who are adversely affected by their inability to obtain employment because of Defendant's actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief as follows:

72. Certification of the case as a class action on behalf of the proposed Class;

73. Designation of Named Plaintiffs Carnella Times and Erving Smith as representatives on behalf of the Class;

74. Designation of Plaintiffs' counsel of record as Class counsel;

75. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*;

76. A preliminary and permanent injunction against Defendant and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein, consistent with the less discriminatory alternative described above;

77. An order that Defendant institute and carry out policies, practices, and programs that provide equal employment opportunities for all Class members who would be eligible under application of the Uniform Guidelines for Employee Selection Procedures and related EEOC Guidance, and that Defendant eradicate the effects of past and present unlawful employment practices;

78. Restore Plaintiffs Carnella Times and Erving Smith and Class Members to their rightful positions at Target;

79. Back pay accruing as a result of a delay in hiring Plaintiffs and Class Members caused by the illegal policies and practices alleged herein;

80. Damages caused to Organizational Plaintiff The Fortune Society by the illegal

policies and practices alleged herein;

81. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law, including but not limited to 42 U.S.C. §§ 2000e-5(k) & 2000e-16;

82. Pre-judgment and post-judgment interest, as provided by law; and

83. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: New York, New York
April 5, 2018

Respectfully submitted,

_____
**OUTTEN & GOLDEN LLP**
Adam T. Klein
Ossai Miazad
Lewis Steel
Cheryl-Lyn Bentley
Christopher McNerney
685 Third Avenue, 25th Floor
New York, New York 10017
Tel.: (212) 245-1000

**NAACP LEGAL DEFENSE AND EDUCATION FUND**
Sherrilyn Ifill
Samuel Spital
40 Rector Street, 5th Floor
New York, New York 10006
Tel.: (212) 965-2200

Coty Montag*
1444 I Street NW, 10th Floor
Washington, DC 20005

**GREATER HARTFORD LEGAL AID, INC.**
Lisa Levy*
Giovanna Shay*
999 Asylum Avenue, 3rd Fl.
Hartford, Connecticut 06105
Tel.: (860) 541-5021

**Pro hac vice* motion forthcoming*

***Attorneys for Plaintiffs and the Putative Settlement Class***