**OUTTEN & GOLDEN LLP**
Adam T. Klein
Ossai Miazad
Lewis Steel
Christopher M. McNerney
685 Third Avenue, 25th Floor
New York, New York 10017

**NAACP LEGAL DEFENSE AND**
**EDUCATIONAL FUND, INC.**
Sherrilyn Ifill
Samuel Spital
40 Rector Street, 5th Floor
New York, New York 10006

Coty Montag
700 14th Street NW, Suite 600
Washington, DC 20005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| CARNELLA TIMES and ERVING SMITH, on behalf of themselves and all others similarly situated, and THE FORTUNE SOCIETY, INC., | : : : : : : | **No. 18 Civ. 2993** |
| Plaintiffs, | : : | |
| -against- | : : | |
| TARGET CORPORATION, | : : | |
| Defendant. | : : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .......................................................... 3

I.      Plaintiffs' Investigation ........................................................................................... 3

II.     Summary of Settlement Terms ................................................................................. 5

        A.      Programmatic Relief: Designing a Valid Selection Process in Consultation
                with Expert Industrial Organizational Psychologists .............................................. 6

        B.      Class Member Relief: Priority Hiring/Interviewing for Non-Exempt Jobs
                at Target Stores or Monetary Relief ...................................................................... 10

        C.      Supporting Re-Entry of Individuals with Criminal History Records. .................. 12

        D.      Release ....................................................................................................... 12

        E.      Attorneys' Fees, Costs, and Service Awards ......................................................... 12

III.    Notice to Class Members, Settlement Administration, and Class Response ................... 13

ARGUMENT ................................................................................................................... 15

I.      The Settlement Class Meets the Legal Standard for Class Certification. ........................ 15

        A.      Numerosity ................................................................................................ 15

        B.      Commonality & Typicality ........................................................................... 15

        C.      Adequacy of the Class Plaintiffs and Their Counsel ........................................... 16

        D.      Certification Is Proper Under Rule 23(b)(3). ..................................................... 17

                1.      Common Questions Predominate. ...................................................... 17

                2.      A Class Action Is Superior to Individual Adjudication of Claims. .......... 18

II.     The Proposed Settlement Is Fair, Reasonable, and Adequate. ...................................... 18

        A.      The Proposed Settlement Is Procedurally Fair .................................................. 19

        B.      The Proposed Settlement is Substantively Fair. ................................................ 20

                1.      Litigation Through Trial Would Be Complex, Costly, and Long
                        (Grinnell Factor 1). ....................................................................... 20

                2.      The Reaction of the Class Has Been Positive (Grinnell Factor 2) ........... 21

                3.      Discovery Has Advanced Far Enough to Allow the Parties to
                        Resolve the Case Responsibly (Grinnell Factor 3). ............................. 22

4.    Litigation Risks Favor Approval (Grinnell Factors 4 and 5). ................... 23

5.    The Risk of Obtaining Class Certification (Grinnell Factor 6)................. 24

6.    Target's Ability to Withstand a Greater Judgment Is Not
       Determinative (Grinnell Factor 7). ........................................................ 24

7.    The Settlement Is Substantial, Even Given the Best Possible Recovery
       and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)............. 24

CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).................................................................................17, 18

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)...............................................20, 21, 22, 23, 24

*Capsolas v. Pasta Res., Inc.*,
    No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012)...............................18

*Chen-Oster v. Goldman, Sachs & Co.*,
    325 F.R.D. 55 (S.D.N.Y. 2018) ...............................................................15, 16, 17

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)....................................................................... *passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)...............................................................................15

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)..........................................................................20, 21

*Duling v. Gristede's Operating Corp.*,
    267 F.R.D. 86 (S.D.N.Y. 2010) .........................................................................16

*Easterling v. Conn., Dep't of Corr.*,
    265 F.R.D. 45 (D. Conn. 2010)....................................................................17, 18

*Easterling v. Conn., Dep't of Corr.*,
    278 F.R.D. 41 (D. Conn. 2011).........................................................................18

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982).......................................................................................15

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)...............................................................................19

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968).............................................................................18

*Griggs v. Duke Power Co.*,
    401 U.S. 424 (1971)....................................................................................2, 25

*Houser v. Pritzker*,
    28 F. Supp. 3d 222 (S.D.N.Y 2014)..............................................................15, 17

iv

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) .......................................................................23

*Little v. Wash. Metro. Area Transit Auth.*,
   249 F. Supp. 3d 394 (D.D.C. 2017).............................................................15, 17

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997).................................................................................16

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ........................................................................17

*Robinson v. Metro-North Commuter R.R.*,
   267 F.3d 147 (2d Cir. 2001)...................................................................................2

*Sykes v. Mel Harris & Assocs., LLC*,
   No. 09 Civ. 8486, 2016 WL 3030156 (S.D.N.Y. May 24, 2016).........................23

*Toure v. Amerigroup Corp.*,
   No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)...........................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................................18, 19

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004).................................................................................22

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008)..................................................................21

**STATUTES**

42 U.S.C. § 2000e *et seq.*..............................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .................................................................................... *passim*

*Report of The Sentencing Project to the United Nations Special Rapporteur on
   Contemporary Forms of Racism, Racial Discrimination, Xenophobia, and
   Related Intolerance: Regarding Racial Disparities in the United States
   Criminal Justice System*, The Sentencing Project (2018), *available at*
   https://www.sentencingproject.org/wp-content/uploads/2018/04/UN-Report-
   on-Racial-Disparities.pdf ........................................................................................3

## INTRODUCTION

Plaintiffs Carnella Times and Erving Smith ("Class Plaintiffs"), on behalf of those similarly situated, and The Fortune Society, Inc. ("Fortune"), a non-profit supporting the successful reentry of formerly incarcerated individuals (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of the Class Settlement[1] reached by Plaintiffs and Target Corporation ("Defendant" or "Target") (collectively, "the Parties").  Plaintiffs brought this case to remedy the discriminatory impact of Target's use of criminal history records in making hiring decisions to the detriment of thousands of qualified African-American and Latino applicants in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*

The parties have agreed to a landmark Settlement that provides far-reaching, innovative class-wide programmatic and individual relief to remedy the discriminatory hiring practices alleged by Plaintiffs in this class action.  The Settlement achieves a complete overhaul of the criminal history screening process used to reject tens of thousands of job applicants by the second largest departmental store retailer company in the U.S. after Walmart.  As part of the Settlement, the Parties jointly selected two Industrial Organizational Psychologists (I/O experts), who worked together to revise and validate Target's guidelines to ensure that only applicants whose criminal records are job-related and recent enough will face disqualification.  This revised policy will be applied to individuals previously rejected for employment at Target because of their criminal history records to determine class membership.  The Settlement provides that those who are eligible for employment under the revised policy can obtain hourly, non-exempt entry-level jobs at Target stores through a Priority Hiring process.

---

[1]     Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

As a direct result of these efforts, this Settlement will allow thousands of African-American and Latino applicants to fairly compete for jobs at Target and furthers one of the fundamental purposes of Title VII "to promote hiring on the basis of job qualifications, rather than on the basis of race or color."[2]  *Griggs v. Duke Power Co.*, 401 U.S. 424, 434 (1971).  The remarkable impact of the I/O experts' work is already evident: Target has applied its revised policy to a subset of over 27,500 job applicants who were previously denied employment because of their criminal history records.  Nearly 60% of the individuals denied under the prior screen would be eligible for employment at Target under the revised policy.

In addition to the revised Screening Process and Priority Hiring, the Settlement Agreement provides qualified Class Members with the option for a monetary award in lieu of employment.  Target also has agreed to make a financial contribution of $600,000 to nonprofit organizations that provide re-entry support to individuals with criminal history records, with the goal of supporting these organizations' efforts in developing a pipeline of qualified applicants who have successfully completed work ready programs, to the benefit of many Class Members.

At Title VII's heart is the need to remove "employment obstacles, not required by business necessity, which create built-in headwinds and freeze out protected groups from job opportunities and advancement."  *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 160 (2d Cir. 2001).  The results achieved in this Settlement ameliorate the precise harms that Title VII was intended to rectify: while the statistics of mass incarceration's disproportionate impact on minorities are stark,[3] the Settlement ensures that any job denials because of criminal history

---

[2]     This Settlement is also a major achievement in advancing the concerted bi-partisan efforts at the local, state and national level to reduce recidivism and the societal costs associated with it by ensuring opportunity for individuals with past offenses to pursue employment.

[3]     For example, African Americans and Latinos compromise 29% of the total U.S. population but make up 57% of the U.S. prison population.  *Report of The Sentencing Project to the United Nations Special Rapporteur on Contemporary Forms of Racism, Racial Discrimination, Xenophobia, and Related Intolerance: Regarding Racial*

records will be consistent with Target's actual business necessity and related to the jobs to which

the applicants applied, greatly lessening the impact of Target's criminal background check policy

on African Americans and Latinos.  Class Counsel believe that the relief provided in this

Settlement can create a ripple effect, encouraging other large and medium size retailers to revise

their policies and open up jobs to thousands of applicants.

On May 14, 2018, the Court took the first step in the settlement approval process by

preliminarily approving the Settlement.  *See* ECF No. 24.  To date, Class Members' response to

this settlement has been overwhelmingly favorable.  As of October 8, 2019, 2,362 Class

Members have submitted valid Claim Forms, one has objected, and no Class Member has opted-

out.[4]  Ex. C (Declaration of Sara Schwermer-Sween ("Schwermer-Sween Decl.") at ¶¶ 21-23.

Class Counsel, experienced in litigating class action employment discrimination cases, firmly

believe that this proposed settlement is in the best interests of the Class, as underscored by the

response of the Class.  For these reasons, and as set forth in greater detail below, Plaintiffs seek

an order: (1) certifying the settlement class; and (2) approving the class-wide settlement, as set

forth in the Settlement Agreement, attached as Ex. A to the Declaration of Ossai Miazad.[5]

## **FACTUAL AND PROCEDURAL BACKGROUND**[6]

### I.    **Plaintiffs' Investigation**

Since 2001, Target has performed criminal background checks on all applicants for

---

*Disparities in the United States Criminal Justice System*, The Sentencing Project, at 6 (2018), *available at* https://www.sentencingproject.org/wp-content/uploads/2018/04/UN-Report-on-Racial-Disparities.pdf.

[4]    The Notice Period closed on September 30, 2019.  *See* ECF No. 33.  However, on September 27, 2019, Target informed the Court that it had inadvertently omitted individuals from the Class List that it provided to the Settlement Administrator.  *See* ECF No. 37.  The Supplemental Notice Period for individuals who were inadvertently omitted from the original Class List is 45 days from the mailing of the Supplemental Notice to the omitted individuals.  *See* ECF No. 38 (approving revised Notice and Notice Period).  The Supplemental Notice will likely be mailed within the next five to seven business days.  *See* Ex. C. (Schwermer-Sween Decl.) at ¶ 26.

[5]    Unless otherwise indicated, all exhibits are attached to the Declaration of Ossai Miazad ("Miazad Decl.").

[6]    Plaintiffs incorporate by reference the factual allegations and procedural history set forth in Plaintiffs' preliminary approval brief, and highlight relevant points here.  *See* ECF No. 5.

employment to its U.S.-based stores.  *See* ECF No. 1 (Compl.) ¶¶ 4-5.  Plaintiffs allege that Target's prior criminal background check policy (its "Screening Process") imported the racial disparities in the criminal justice system into the employment process, thereby multiplying the negative impact of the policy on African-American and Latino job applicants.  *Id.* ¶ 13.

On March 6, 2007, Plaintiff Carnella Times (née McDade) filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") based on Target's denial of employment to her because of her criminal history record.  *Id*. ¶¶ 17, 28-29. Although in 2011 the EEOC found probable cause that Target's background check policy violated Title VII, the matter remained with the agency for many years without resolution. Miazad Decl. ¶ 10.   Plaintiff Times did not give up and once it became clear that the EEOC was not in a position to resolve the matter she sought out private counsel.  *Id*. ¶¶ 10, 12.  On September 14, 2015, the EEOC issued Plaintiff Times a Notice of Right to Sue and produced documents that Target had provided to the EEOC.  *Id.* ¶ 11.  Thereafter, Class Counsel engaged in a substantial investigation of Target's hiring practices and potential remedies to reduce the disparate impact of the policy on African-American and Latino applicants.  *Id.* ¶¶ 16-24.  As part of this effort, Class Counsel regularly met and communicated with organizational Plaintiff Fortune in order to understand the challenges that Target's Screening Process imposed on individuals with criminal history records.  *Id.* ¶¶ 18, 81-83.

In November 2015, Class Counsel sent Target a letter on behalf of Plaintiffs and the putative class inviting Target to negotiate a resolution of the claims.  *Id.* ¶ 13. After engaging in an informal exchange of discovery, the Parties agreed to mediate the dispute with the assistance of a highly respected and experienced mediator, Lynn Cohn, a professor at Northwestern Pritzker School of Law.  *Id.* ¶ 25.  From March 2016 to June 2017, Plaintiffs attended eight in-person

meetings with Target's counsel, the mediator, or both, and engaged in an extensive back and forth between the sessions. *Id.* ¶¶ 26-28. On March 26, 2018, the Parties executed the Settlement Agreement. *See* Ex. A (Agreement). On April 5, 2018, Plaintiffs filed the Complaint and a motion for preliminary Settlement approval. ECF Nos. 1, 4.

## II.   Summary of Settlement Terms

The objectives of this litigation were to ensure that individuals with criminal history records have access to stable employment and to substantially alter Target's Screening Process, which had a discriminatory effect on African-American and Latino applicants. The Settlement achieves these objectives by providing for a process to replace Target's Screening Process with a new validated policy developed by I/O experts, Priority Hiring for Class Members, and allocating funds to those who choose compensation or are otherwise ineligible for employment at Target. The Settlement will enable thousands of African-American and Latino applicants—Class Members, but also future job seekers—to fairly compete for jobs at Target.

Specifically, the Settlement required Target to retain two I/O experts to lead in the design, development, and implementation of properly validated adjudication guidelines for the post-conditional-offer hiring of job applicants with criminal history records for hourly, non-exempt jobs at Target. Ex. A (Agreement) § 3.3(B). The I/O experts retained numerous other experts to work with them on developing the guidelines, including experts in the fields of criminology and organizational psychology, a former FBI agent, a Target jobs subject matter expert, and a former public defender. Miazad Decl. ¶ 39. The validated criteria were used to determine membership in the Class and to determine Class Member eligibility for jobs. Ex. A (Agreement) § 3.3(G). They will also be used in future hiring. *Id.* Based on this validated criteria, the Settlement provides eligible Class Members with relief directly tied to the harm they

suffered: priority hiring for employment at Target. *Id.* § 3.4(A)(1). Class Members who will not benefit from a Target job may be eligible to receive a monetary award in lieu of employment. *Id.* § 3.4(B)(1). Finally, the Settlement provides funding to non-profit organizations who assist individuals with criminal histories to re-enter the workforce. *Id.* § 3.5.

Target has agreed to pay $3,742,500 ("Settlement Fund") to resolve the lawsuit, exclusive of the I/O experts' fees and the cost of administering the settlement. *Id.* § 1.36. Target also agreed to pay the entire costs for implementing the programmatic relief, including the expert and mediator fees, and the costs of administering the Settlement. *Id.* §§ 1.36, 3.1(B)-(C).

A. **Programmatic Relief: Designing a Valid Selection Process in Consultation with Expert Industrial Organizational Psychologists.**

The Parties have agreed on meaningful and innovative programmatic relief to directly address the driving issue of this litigation: fixing a flawed and discriminatory criminal background check Screening Process that imported the huge disparities in arrest and conviction rates for African Americans and Latinos into Target's hiring practices.

The Parties jointly selected the I/O experts, Drs. Kathleen Lundquist and Nancy Tippins, to work together to revise and validate Target's guidelines for use of criminal history records in making its hiring decisions. *See id.* § 3.3(A); Miazad Decl. ¶ 33. Drs. Lundquist and Tippins have experience conducting professional job analyses and validating selection criteria, including experience in the criminal background check context. *See* Ex. A (Agreement) § 3.3(A); Miazad Decl. ¶ 35.

Since the Court's preliminary approval on May 14, 2018, Class Counsel have expended significant time and effort in implementing the programmatic relief and determining membership in the Class. Pursuant to the Settlement Agreement, Target provided the I/O experts with all relevant information relating to Target's guidelines and practices relating to the use of criminal

history background checks in hiring.  Ex. A (Agreement) § 3.3(C), (G); Miazad Decl. ¶ 35.  The

I/O experts met and conferred with the Parties as part of the Scoping Phase of their work.  Ex. A

(Agreement) § 3.3(E); Miazad Decl. ¶ 36.  The Scoping Phase included: developing a detailed

scope of work and budget proposal; identifying relevant data and other information necessary to

conduct their work; and providing a timeline for completion of the work, documented in a Scope

of Work and Budget Report ("SOW").  Ex. A (Agreement) §§ 3.3(D), (E); Miazad Decl. ¶ 36.

The Parties were given the opportunity to comment on the proposed SOW, and the I/O experts

considered the Parties' comments and provided a second SOW.  Ex. A (Agreement) § 3.3(E);

Miazad Decl. ¶36.

Once the SOW was established, the I/O experts researched and drafted Interim Criteria,

which are the revised adjudication guidelines and revised Screening Process for Target's

evaluation of criminal history records of job applicants, informed by validation techniques set

forth in the Society for Industrial Organizational Psychology ("SIOP") Principles, the EEOC's

Uniform Guidelines on Employee Selection Procedures ("Uniform Guidelines"), and other

applicable professional standards.  Ex. A (Agreement) §§ 3.3(B), (G).  The Settlement

Agreement also guided the I/O experts' work by outlining Guiding Considerations specific to

Target's hiring needs and Plaintiffs' concerns for fairness and equity in the Screening Process.

*Id.* § 3.3(F); Miazad Decl. ¶ 38 (listing Guiding Considerations).  To develop the Interim

Guidelines, the I/O experts reviewed relevant job descriptions, job analysis study reports, and

other materials provided by Target; interviewed an internal Target subject matter expert

regarding the relevant jobs; interviewed an internal Target subject matter expert regarding

Target's criminal history background check policies and practices; conducted job-observation

site visits at two Target stores; and convened regular telephone conference calls with counsel for

the Parties.  Miazad Decl. ¶ 39.  As part of their validation efforts, the I/O experts convened a panel of experts across various disciplines between July 31 and August 2, 2018 to provide guidance on developing job-related screening criteria.  *Id.*; ECF No. 29 (Status Letter to Court).

On September 10, 2018, the I/O experts delivered to the Parties the proposed Interim Criteria, which were designed to reduce the discriminatory impact of Target's Screening Process and ensure it is consistent with business necessity.[7]  Miazad Decl. ¶ 40.  Pursuant to the Settlement Agreement, 30 days later, on October 10, 2018, the Parties submitted their comments on the proposed interim criteria.  *Id.* ¶ 41.  The I/O experts reviewed the Parties' comments and revised the proposed Interim Criteria.  Ex. A (Agreement) § 3.3(G)(4); Miazad Decl. ¶ 41.  On November 9, 2018, the I/O experts delivered the second Interim Criteria to the Parties.  Ex. A (Agreement) § 3.3(G)(4); Miazad Decl. ¶ 42; ECF. No. 31 (Status Letter to Court).  Fourteen days later, the Parties submitted their disputes with the proposed Second Interim Criteria to the Mediator, Lynn Cohn.  Ex. A (Agreement) § 3.3(G)(6); Miazad Decl. ¶ 43.  The Mediator made recommendations regarding resolution to the I/O experts on January 30, 2019.  *See* Ex. A (Agreement) § 3.3(G)(6); Miazad Decl. ¶ 44.  The Parties promptly responded to the Mediator's recommendations outlining the recommendations that they continued to dispute.  *Id.* ¶ 45.

On February 18, 2019, the I/O experts submitted their final Interim Criteria to the Parties. *Id.* ¶ 46.  Until the Final Criteria are established, the Interim Criteria will be used for hiring applicants with criminal history records for jobs at Target.  *Id.* ¶ 47.  The Criteria were also used to determine who can participate in the settlement and the category of relief for which they are eligible.  Once the Interim Criteria were finalized, Target produced a list of all applicants who (1) voluntarily self-identified as "Black" or "African American" (solely or in combination with

---

[7]      The Criteria are confidential because they implicate Target's hiring practice.  To the extent the Court wishes to review the Criteria, the Parties request that they be submitted *in camera*.  Ex. A (Agreement) § 3.3(I).

other races/ethnicities) or "Latino" or Hispanic" (solely or in combination with other races/ethnicities) on the employment application or who selected "prefer not to answer," or who did not complete this section of the application; and (2) were denied employment from a Target stores job due to their criminal history record during the class period.  Ex. A (Agreement) § 4.1(A); Miazad Decl. ¶ 48.  Target's third-party vendor applied the rules set forth in the Criteria to this list to determine which individuals met the Interim Criteria.  Miazad Decl. ¶ 48.  Those individuals meeting the Criteria are members of the Class and eligible for priority hiring or monetary relief, unless Target can establish they were, or would have been, denied employment for reasons other than their criminal history records, *see* Ex. A (Agreement) § 3.2(A)(1); or are current Target Team Members, *see id.* Ex. 2.  Miazad Decl. ¶ 48.  For any individual who was denied employment at Target for what Target defined as "falsification" (*i.e.*, failure to disclose complete and accurate information about their criminal histories), membership in the Class was based on whether the individual would have qualified for employment under the Interim Criteria based on their incomplete disclosure and their criminal history.  Ex. A (Agreement) § 3.3(G)(8); Miazad Decl. ¶ 49.  Class Members who would be included in the Class but for an unresolved dispute regarding the Interim Criteria were included, and are entitled to receive monetary relief instead of priority hiring.  Ex. A (Agreement) § 3.3(G)(9); Miazad Decl. ¶ 50.[8]

Thus, in the last 16 months since the Court granted preliminary approval, Class Counsel worked diligently to implement the programmatic relief provided by the Settlement by revising and validating Target's Screening Process.  Based on the substantial work performed by counsel for the Parties and the I/O experts to date, over 16,469 Class Members (roughly 60%) who were

---

[8]     The Parties agreed that disputes that were not resolved through the process described above would not reduce by more than 20% the number of Class Members otherwise entitled to priority hiring under the Second Interim Criteria.  Ex. A (Agreement) § 3.3(G)(9).

previously denied employment by Target because of their criminal records are now eligible for employment—an astonishing decrease in the exclusion rates of qualified job applicants based on their criminal records.  Miazad Decl. ¶ 54.

Going forward, for a period of one year during which the Interim Criteria are implemented, the I/O experts will continue to develop the Final Criteria—the proposed revised Screening Process for Target's evaluation of criminal history records of job applicants.  Ex. A (Agreement) § 3.3(H)(1).  During this time, the I/O experts will provide the Parties and the Mediator with quarterly status reports.  *Id.* § 3.3(J).  At the end of the one-year period, the Parties will have an opportunity to review and comment on the proposed Final Criteria, with any conflicts negotiated with a mediator.  *Id.* §§ 3.3(H)(3)-(5).  In the event of a continuing impasse, Class Counsel shall be permitted to present their position to Target's Chief Legal Officer, and may request an in-person meeting with Target's Chief Legal Officer together with the I/O experts to resolve any remaining outstanding issues.  *Id.* § 3.3(H)(5).  The I/O experts will then revise and finalize the Final Criteria to maximize their validity and minimize their potential for adverse impact.  *Id.* § 3.3(H).

### B. Class Member Relief: Priority Hiring/Interviewing for Non-Exempt Jobs at Target Stores or Monetary Relief.

Through this Settlement, Class Members have the opportunity to secure employment that they once sought and for which they were rejected.  Target will engage in Priority Hiring of Class Members for hourly, non-exempt, non-supervisory jobs for which they are qualified, but were denied based on Target's Screening Process ("Group A Filers").  *See id.* § 3.4(A).  Qualified Class Members will be offered available Target positions before other applicants.  *Id.* If an hourly position is not immediately available within a twenty-mile commuting distance of the Class Member, the Class Member will be offered the first Target job for which he or she is

qualified that becomes available for a period of 12 months from approval of the Settlement.  *Id.*
Additionally, Class Members who are qualified for a supervisory role will bypass the initial
screening interview and be given an opportunity to interview for those positions.  *Id.*

Moreover, Group A Filers who are hired pursuant to the Priority Hiring process and
remain employed for six months will receive a letter of employment that states that Target hired
them with knowledge of their criminal record, and as of that date, they remained employed with
Target.  *Id.* § 3.4(A)(4)(a).  Group A Filers who are hired pursuant to the Priority Hiring process,
but are terminated less than six months for reasons outside of their control, will receive a letter of
employment that states that Target hired them with knowledge of their criminal record, and that
the Group A Filer's employment was terminated due to business reasons.  *Id.* § 3.4(A)(4)(b).
Such letters of employment can be a valuable resource to Class Members in assisting them in
seeking future employment opportunities.

Some Class Members will not be successful in gaining employment with Target because,
among other things, they are already employed, retired, or have a disability; do not reside within
a defined commuting distance of a Target store; are out of the workforce due to family medical
or military service obligations; or are ineligible to participate in Priority Hiring/Interviewing
pursuant to reasons specified in the Settlement Agreement.  *Id.* § 3.4(B).  For those Class
Members ("Group B Filers"), Target has agreed to individual monetary awards not to exceed
$1,000.00.  *Id*. § 3.4(B)(2).  The Administrator will pay Group B Filers pro rata based on the
number of participants.  *Id.*  Target's total contribution toward the awards will not exceed
$1,200,000.00 of the Settlement Fund.  *Id*. § 3.4(B)(3).  Qualified Group A Filers who do not
benefit from Priority Hiring/Interviewing within 12 months from the date of final approval shall
have the opportunity to participate in the Settlement as Group B Filers and receive a monetary

payment.  Ex. B (Addendum to Settlement Agreement and Release).

### C.     Supporting Re-Entry of Individuals with Criminal History Records.

Target has agreed to contribute $600,000.00 to organizations that provide re-entry support to individuals with criminal history records, with the goal of supporting those organizations' efforts to develop a pipeline of qualified applicants who have successfully completed work ready programs at such organizations (the "Pipeline Project").  Ex. A (Agreement) § 3.5(A).  The Parties will work cooperatively to identify potential organizations, and have already identified the following organizations: A New Way of Life Reentry Project, Los Angeles, CA; AccessAbility Career & Education Pathways, Minneapolis, MN; The Center for Employment Opportunities, New York, NY; The Fortune Society, Inc., Long Island City, NY; RS Eden Correctional Services, Minneapolis, MN; and Community Partners in Action, Hartford, CT.  *Id.* § 3.5(B).  These organizations will receive written information about the Pipeline Project and an invitation to submit statements of interest and other materials to assist in the selection of participant organizations.  *Id.*  Moreover, Class Members will receive notice of the selected, Target-funded work ready programs participating in the Pipeline Project.  *Id.*

### D.     Release

All Class Members who do not exclude themselves from the settlement will release claims under Title VII and parallel state and local laws based on their denial of a Target Stores job based on criminal history records.  *Id.* §§ 1.7, 5.1.

### E.     Attorneys' Fees, Costs, and Service Awards

Simultaneously with the instant motion, Plaintiffs also move the Court for approval of an award of $1,900,000.00 for attorneys' fees plus actual litigation expenses and costs.  *Id.* § 3.7. Plaintiffs also seek service awards of no more than $20,000.00 each for Plaintiffs Times and Fortune, and $2,500.00 for Plaintiff Smith.  *Id.* § 3.8.

III.   <u>**Notice to Class Members, Settlement Administration, and Class Response**</u>

On May 31, 2019, based on the final Interim Criteria, Target produced to Class Counsel a list of all applicants who it had determined were eligible as Class Members.  *Id.* § 4.1(A); Miazad Decl. ¶ 48.  For applicants who Target determined would not have met the Interim Criteria for hiring eligibility at the time of application, Target provided Class Counsel the reason for and evidence of the applicant's disqualification based on the Interim Criteria.  Ex. A (Agreement) § 4.1(B).  Class Counsel thereafter had 20 days to challenge the determination.  *Id.* § 4.1(B).  On June 19, 2019, the Parties met and conferred regarding disputes about the class list. Miazad Decl. ¶ 53; ECF No. 32.  On July 18, 2019, Target submitted the final Class List to the administrator.  Ex. C (Schwermer-Sween Decl.) ¶ 10.

Separately, on March 21, 2019, the Parties met and conferred regarding the Notice and Claim Form and agreed to seek to streamline the notice process by distributing separate notices and claim forms for (1) Class Members who are eligible to be either Group A or Group B Filers, and (2) Class Members who are eligible only as a Group B Filer.  ECF No. 32.   The Court approved the revised Notices and Claim Forms.  ECF No. 33 (July 18, 2019, Order).  The Notice and Claim Form are straightforward.  Class Members must validate their race/ethnicity information, and Group A Filers have the option to choose Priority Hiring or monetary relief, while Group B Filers are informed that they will receive monetary relief.  Ex. C (Schwermer-Sween Decl.) at Exs. 1, 2.  The Parties selected Rust Consulting, an experienced claims administrator, to administer the settlement.  The Settlement Administrator's costs will be paid by Target in addition to the settlement amounts.  *Id.*  ¶ 28.  On July 31, 2019, the Settlement Administrator mailed 18,804 and e-mailed 3,341 Court-approved notices.  *Id.* ¶¶ 13, 15.  Class Members were also able to view the Notice and Claim Form through the website and were

directed to submit online or print and submit it via e-mail, fax, or U.S. Mail.  *Id.* ¶¶ 5-9.  On August 30, 2019, the Settlement Administrator sent reminder postcards by U.S. mail to 17,028 Class Members and by e-mail to 3,341 Class Members who had not submitted a Claim Form or Request for Exclusion.  *Id.* ¶ 16, Ex. 3.

Ultimately, approximately 16,956 (90.2%) of potential Class Members were mailed notice of the settlement.  *Id.* ¶¶ 17-20.  Of these 16,956 potential Class Members, 2,362 submitted timely claim forms (13.93%), and of those 149 filed Group A Claim Forms and 2,213 filed Group B Claim Forms.  *Id.* ¶ 21; Miazad Decl. ¶ 66.

The Notice advised Class Members that they could object to or exclude themselves from the settlement.  Ex. C (Schwermer-Sween Decl.), Exs. 1, 2 (Notices) at 2.  No Class Members have requested exclusion from the settlement.  *Id.* ¶ 22.  Only one Class Member submitted an objection to the settlement (the "Objector"), objecting to the service awards for Plaintiffs Times and Smith and the individual monetary relief and its tax treatment.  *Id* ¶ 23 & Ex. 4.

Further, Class Counsel recently learned that when Target's third-party background check vendor applied the Interim Criteria to the list of potential class members, it inadvertently omitted over 40,000 individuals from that adjudication process (the "omitted individuals").  Miazad Decl. ¶ 61; *see* ECF No. 37 (Letter to Court).  As a result, none of the omitted individuals were included on the final class list provided to the Claims Administrator.  *Id.*  The Parties agreed to resolve this issue by having the Claims Administrator send notice to all of the omitted individuals.  *Id.*  Target's third-party background check vendor will conduct the adjudication process for those individuals who return Claim Forms, and the Parties will work together to resolve any disputes regarding Class membership.  *Id.*  Class Counsel will provide the Court with supplemental

14

information on Class Members' response to the Settlement after the close of the

Supplemental Notice Period.  Miazad Decl. ¶ 62.

Target has sent notices to federal and state authorities as required by the Class Action

Fairness Act ("CAFA") on July 30, 2019.  *See* Ex. C (Schwermer-Sween Decl.) ¶ 4.

## ARGUMENT

## I.     The Settlement Class Meets the Legal Standard for Class Certification.

On May 14, 2018, the Court preliminarily certified the Settlement Class.  *See* ECF No.

24.  Plaintiffs now respectfully request that the Court grant final certification because the

Settlement Class continues to meet all of the requirements of Rule 23.  *See* Fed. R. Civ. P. 23.

### A.     Numerosity

The Settlement Class is over 18,000 job applicants, making joinder impracticable.  *See*

Schwermer-Sween Decl.¶ 13; *see Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483

(2d Cir. 1995) (presuming numerosity at "40 members").

### B.     Commonality & Typicality

The proposed class also satisfies the commonality requirement, the purpose of which is to

test "whether the named plaintiff's claim and the class claims are so interrelated that the interests

of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of*

*the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Here, all members of the class are unified by

common factual allegations and legal theory—they are all African-American and Latino job

applicants who were denied employment because of Target's criminal history Screening Process.

*See Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 419 (D.D.C. 2017) (finding

that class of applicants in lawsuit challenging employer's criminal history hiring screen satisfied

the commonality requirement); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 243-45 (S.D.N.Y 2014)

(same); *see also Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 72-73 (S.D.N.Y. 2018)

(female employees demonstrated that employer's managers made decisions using a common

mode of discrimination).  Typicality is also met because Class Plaintiffs and all putative Class

Members were subjected to the same procedures that Plaintiffs challenge.  *See Duling v.*

*Gristede's Operating Corp.*, 267 F.R.D. 86, 97-98 (S.D.N.Y. 2010); *see also Marisol A. v.*

*Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (Typicality is satisfied "when each class member's

claim arises from the same course of events, and each class member makes similar legal

arguments to prove the defendant's liability.") (citation omitted).

### C.     Adequacy of the Class Plaintiffs and Their Counsel

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class."  Class Plaintiffs meet this requirement because they have suffered the

same alleged Title VII violations as members of the putative class.  Further, there is no evidence

that Class Plaintiffs have interests that are antagonistic to or at odds with those of putative Class

Members.  *See Duling*, 267 F.R.D. at 99 ("The interests of the proposed class representatives . . .

are well aligned with those of the absent class members.").

Class Counsel satisfy the adequacy requirement of Rule 23(g).[9]  They have performed

substantial work identifying, investigating, negotiating, and settling Plaintiffs' and putative Class

Members' claims, crafting an innovative settlement framework through the last four and a half

years.  Miazad Decl. ¶¶ 16-63; Montag Decl. ¶ 17, 19.  Class Counsel have significant

experience prosecuting and settling employment class actions, including background check

cases.  Miazad Decl. ¶¶ 4-8.  Class Counsel are well-versed in the impediments to employment

---

[9]     Rule 23(g) sets forth criteria the district court must consider in evaluating the adequacy of proposed
counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's
experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3)
"counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the
class."  Fed. R. Civ. P. 23(g)(1)(A).

that criminal records create and are at the forefront of litigating issues of criminal history records and other Title VII discrimination. *See, e.g., Houser*, 28 F. Supp. 3d at 248 (finding O&G "bring[s] to the case a wealth of class action litigation experience" and were adequate to represent approximately half-million person African-American and Latino job applicant class in background check litigation); *Easterling v. Conn., Dep't of Corr.*, 265 F.R.D. 45, 51 n.2 (D. Conn. 2010) (O&G attorneys met standard of qualified and experienced class counsel in Title VII discrimination class case) modified, 278 F.R.D. 41 (D. Conn. 2011); *Little*, 249 F. Supp. 3d at 422 (finding LDF adequate in a Title VII challenge to employer's use of criminal background checks, and noting that "class counsel are experienced in class actions and other complex litigation"); *see also Chen-Oster*, 325 F.R.D. at 78 (appointing O&G as class counsel).

### D.    Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions of law or fact "predominate" and that a class action is superior to other avenues of redress. These requirements are met here.

#### 1.    Common Questions Predominate.

The Rule 23(b)(3) predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Here, Plaintiffs' common contentions—that Target's Screening Process had a disparate impact on African-American and Latino applicants in violation of Title VII and is inconsistent with business necessity—predominate over any issues affecting only individual Class Members. *See Chen Oster*, 325 F.R.D. at 81 (finding predominance including as to whether the employer's performance review process had a disparate impact on female employees); *Easterling v. Conn., Dep't of Corr.*, 278 F.R.D. 41, 48-50 (D. Conn. 2011) (finding

17

predominance satisfied as to whether challenged physical fitness test had disparate impact on female applicants or was justified by business necessity).

### 2.    A Class Action Is Superior to Individual Adjudication of Claims.

Rule 23(b)(3) next considers whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).[10]  Here, certification of the Settlement Class is "superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually."  *Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012). Plaintiffs and Class Members have limited financial resources with which to prosecute individual actions.  Employing the class device here will achieve economies of scale for Class Members and conserve judicial resources.

## II.    <u>The Proposed Settlement Is Fair, Reasonable, and Adequate.</u>

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  To determine procedural fairness, courts examine "the negotiating process leading to settlement."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  To determine substantive fairness, courts evaluate whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell* Factors"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000).

---

[10]    Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial") (internal citation omitted).

Courts examine fairness in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation omitted).

### A.     The Proposed Settlement Is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached as a result of Plaintiffs' thorough review and investigation of Target's Screening Process and vigorous, arm's-length negotiations, and an evaluation of the merits of the claims and defenses by experienced counsel.  *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (settlement was "procedurally fair" after plaintiffs engaged in significant discovery and enlisted the services of an experienced mediator.).  A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quotation omitted).

Here, Class Counsel engaged in a substantial investigation of Target's hiring practices, including regularly meeting and communicating with Plaintiff Fortune in order to understand the challenges that Target's Screening Process imposed on individuals with criminal history records, conducting in-depth interviews of potential Class Members, reviewing Plaintiff Times's EEOC file, reviewing Plaintiffs' individual experiences and claims, and conducting research regarding the claims, defenses, and damages.  Before the mediation, the Parties engaged in a robust exchange of discovery, and Target produced records about its Screening Process and applicant data, for which Class Counsel engaged experts to assess and analyze.  As just one illustrative example, after reviewing Target's background check process, the parties engaged in a day-long session with the administrators of Target's policy about the policy's provisions and implementation.

With a well-informed understanding of the scope of the legal issues and underlying facts, the Parties agreed to mediate the dispute with the assistance of Lynn Cohn, an experienced class action mediator.  Because the liability issues and hiring processes were complex, the Parties agreed to, and participated in, eight intensive meetings over a period of 15 months, as well as numerous additional communications between the parties and mediator.  Throughout the process, the Parties held private conferences with the mediator to facilitate discussions.  By mid-2017, the Parties had finalized a Settlement Term Sheet.  Over the following six months, the Parties negotiated a detailed agreement.

This process afforded the Parties' experienced counsel a strong basis to evaluate the merits of the claims.  Since preliminary approval, the Parties have worked with the I/O experts to develop the Interim Criteria for revising Target's Screening Process and providing Class Members Priority Hiring.  These efforts reinforce Class Counsel's view that this settlement is fair and that the programmatic relief provides a real and substantial benefit.

> **B.      The Proposed Settlement is Substantively Fair.**

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement.  495 F.2d at 463.  Here, all of the *Grinnell* factors weigh in favor of final approval of the settlement.

> **1.      Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).**

By reaching a favorable settlement early, before certification and dispositive motions, trial, or appeals, Plaintiffs avoid significant expense and delay and ensure timely individual and programmatic relief for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*

20

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case, in particular, is highly complex, with thousands of Class Members raising Title VII disparate impact claims based on background check policies that have been litigated in very few cases.

Should the case move to contested litigation, Plaintiffs would likely face a motion to dismiss, and strong opposition to class certification and a motion for summary judgment after a lengthy discovery process.[11]  If Plaintiffs were able to certify the class and overcome a summary judgment motion, a trial on the merits would involve significant risk.  While Plaintiffs believe they could establish liability and defeat Target's defenses, this would require significant factual development and favorable outcomes at trial, and on appeal, all of which are inherently uncertain and lengthy.  This settlement, on the other hand, provides significant relief in a prompt and efficient manner, and the programmatic relief that might well exceed the class's best case at trial.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

Here, no Class Member has requested exclusion, and only one Class Member has objected to the settlement. Ex. C (Schwermer-Sween Decl.) ¶¶ 22-23.  This is strong evidence of fairness.  *See Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

Class Members' participation rate also supports final approval of the settlement.  Here, approximately 2,362 Class Members have submitted Claim Forms (12.56% of those who were mailed notice, and 13.93% of Class Members who received mailed notice).  *See* Ex. C (Schwermer-Sween Decl.) ¶¶ 13, 17, 20-21; Miazad Decl. ¶ 66.  This is a robust participation

---

[11]    For example, O&G's background check discrimination case against the U.S. Census Department, which spanned over six years and at least 28 conferences involving the Court, also involved three separate motions to dismiss in addition to the defendants' opposition to class certification and *Daubert* challenges to their expert witnesses.  Miazad Decl. ¶ 34.

rate for a case of this size, particularly given the long class period dating back to 2006.  Miazad Decl. ¶ 66.

The lone Objector's issues with the settlement do not counsel against final approval.  The settlement amount is reasonable and, moreover, was intended to compensate individuals who would not succeed in gaining employment with Target.  Here, while the Objector selected monetary relief, he could have selected Priority Hiring.  *Id.* ¶ 68.  Even so, his objection also does not account for the substantial value to the class derived from this Settlement's robust programmatic relief.  The Objector's further concern with the tax treatment of the individual payments ignores that even 1099 payments would be subject to taxes.  Finally, while the Objector's issues with the service payments to Class Plaintiffs are separately addressed in Plaintiffs' service awards brief, Objector's New York State Division of Human Rights charge against Target did not contribute to this settlement, and thus does not provide a basis to increase his payment share.  His complaint was dismissed after a finding of no probable cause, *id.*, meaning that absent this settlement he would recover nothing.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

The Parties have completed more than sufficient discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quotation omitted).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian*, 80 F. Supp. 2d at 176 (quotation omitted).

The Parties' efforts and discovery here easily meet this standard.  The Parties engaged in significant investigation before entering into negotiations and in preparing for multiple

mediations.  Throughout the mediation process, the Parties exchanged detailed mediation statements setting forth their respective positions, and extensively arguing their positions.  Target produced a substantial number of documents, including its policies and procedures used to screen applicants, and applicant data, all of which Class Counsel and Plaintiffs' experts reviewed and analyzed.  The Parties participated in eight in person conferences or mediation sessions.  They also had multiple telephone conferences to discuss the information Target produced and the Parties' positions.  Class Counsel also conducted their own independent investigation, including interviewing the named Plaintiffs, Class Members and Fortune, and reviewing numerous documents produced as part of the EEOC's investigation.

### 4.    Litigation Risks Favor Approval (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, they also recognize it is subject to real risk.  Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969). In weighing the risks of establishing liability and damages, "the Court 'must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.'" *Sykes v. Mel  Harris & Assocs., LLC*, No. 09 Civ. 8486, 2016 WL 3030156, at *13 (S.D.N.Y. May 24, 2016) (quoting *In re Austrian*, 80 F. Supp. 2d at 177).

Title VII disparate impact class actions are subject to considerable risk.  Miazad Decl. ¶ 31.  This is especially true here, in an employment discrimination claim involving the discriminatory effects of an employer's use of criminal history records—which has few analogues in federal court litigation.  *Id.*  Plaintiffs are confident that their discrimination claim would be successful at trial.  However, Class Counsel are cognizant of the risk involved in bringing this case through trial and to verdict.  Additionally, establishing damages for a class of thousands of class members is not without challenges.  Even if Plaintiffs prevailed on the merits,

in order to establish back pay, each Class Member would have to prove that he or she would have been qualified for the position, based on the validated criminal history adjudication process, and then satisfy other conditions to demonstrate a right to monetary relief.  In contrast to these known risks, the settlement ensures that Target will offer employment to qualified Class Members or compensation and will change its policies.  This factor weighs in favor of approval.

5.       **The Risk of Obtaining Class Certification (*Grinnell* Factor 6).**

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet certified the class and such a determination would likely be reached only after extensive briefing.  Target may argue that individual questions preclude class certification, including whether the relevant policies and procedures were consistently applied in all 1,800 stores.  Should the Court certify the class, Target would likely later challenge certification and move to decertify, requiring another round of briefing.  Target may also seek permission to file an interlocutory appeal under Rule 23(f).  Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay.  Accordingly, this factor favors approval.

6.       **Target's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).**

A "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *In re Austrian*, 80 F. Supp. 2d at 178 n.9.  Here, the settlement eliminates the risk of collection by requiring Defendant to pay the total amount owed to Class Members within 14 days of the Effective Date.  *See* Ex. A (Agreement) § 3.1(A).  As such, this factor is not determinative and has no bearing on the settlement's fairness.

7.       **The Settlement Is Substantial, Even Given the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

The relief provided in the settlement is groundbreaking and innovative.  It provides a process for remedying the precise discriminatory policy and practice that Plaintiffs challenged,

24

thus providing access to jobs for thousands of applicants at one of the nation's largest employers. Through extensive expert validation work, it specifically ensures that any job denials because of criminal history records will be consistent with Target's actual business necessity and related to the jobs to which the applicants applied, greatly lessening the impact of Target's criminal history screen on African Americans and Latinos.  Based on the work performed by experts to date, already over 60% Class Members who would be previously denied employment by Target because of their criminal records are now eligible for employment.  Miazad Decl. ¶ 54.  The settlement also provides Class Member relief in the form of Priority Hiring or monetary relief. Further, through the Pipeline Project individuals with criminal records, including Class Members, will have access to re-entry support.

This settlement thus directly tracks the harm alleged—Class Members' denial of employment because of Target's consideration of their criminal history records—and furthers one of Title VII's most important purposes: "to promote hiring on the basis of job qualifications, rather than on the basis of race or color."  *Griggs*, 401 U.S. at 434.  It will directly impact the lives of countless Class Members and other minority applicants.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court approve the settlement, certify the Settlement Class, and enter an Order granting Plaintiffs' Motion.

Dated: October 9, 2019
      New York, New York

Respectfully submitted,

*/s/ Ossai Miazad*
**OUTTEN & GOLDEN LLP**
Ossai Miazad
Adam T. Klein
Lewis Steel
Christopher M. McNerney
685 Third Avenue, 25th Floor
New York, New York 10017
Tel.: (212) 245-1000

**NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.**
Sherrilyn Ifill
Samual Spital
40 Rector Street, 5th Floor
New York, New York 10006
Tel.: (212) 965-2200

Coty Montag
700 14th Street NW, Suite 600
Washington, DC 20005
Tel.: (202) 682-1300

***Attorneys for Plaintiffs and the
Settlement Class***

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on **October 9, 2019**, a copy of the foregoing document was filed electronically and service made by certified mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by certified mail for anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Ossai Miazad*
Ossai Miazad