**OUTTEN & GOLDEN LLP**
Adam T. Klein
Ossai Miazad
Lewis Steel
Christopher M. McNerney
685 Third Avenue, 25th Floor
New York, New York 10017
Tel.: (212) 245-1000

**NAACP LEGAL DEFENSE AND**
**EDUCATIONAL FUND, INC.**
Sherrilyn Ifill
Samuel Spital
40 Rector Street, 5th Floor
New York, New York 10006

Coty Montag
700 14th Street NW, Suite 600
Washington, DC 20005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| CARNELLA TIMES and ERVING SMITH, on behalf of themselves and all others similarly situated, and THE FORTUNE SOCIETY, INC., | : : : : : | |
|  | : | **No. 18 Civ. 2993** |
| Plaintiffs, | : : | |
| -against- | : : | |
| TARGET CORPORATION, | : : | |
| Defendant. | : : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## UNOPPOSED MOTION FOR NAMED PLAINTIFF SERVICE AWARDS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 1

I.     Contributions Made by Class Plaintiffs ............................................................... 1

      A.     Contributions Made by Named Plaintiff Times ...................................... 2

      B.     Contributions Made by Named Plaintiff Smith ...................................... 4

II.    Contributions Made by Named Plaintiff Fortune Society ................................... 5

III.   Notice and the Reaction of the Class. ................................................................. 6

ARGUMENT ..................................................................................................................... 7

I.     The Service Payments Are Reasonable and Should Be Approved....................... 7

      A.     Class Plaintiffs and Fortune Spent Significant Time On and Brought Significant Value to This Settlement, While Facing Significant Risk................... 8

      B.     The Ultimate Recovery Supports the Requested Payments................................. 10

      C.     Plaintiffs Times and Smith Assumed Risk in Participating in This Case............. 12

      D.     The Multiple Mediations Overseen by an Experienced Mediator Reduces the Risk of Collusion Between the Parties. ............................................. 13

      E.     The Court Should Reject the Lone Objection....................................................... 14

CONCLUSION ................................................................................................................. 15

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                    **PAGE(S)**

*Beesley v. Intl. Paper Co.,*
    No. 06 Civ. 703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ...................................................11

*Chesemore v. Alliance Holdings, Inc.,*
    No. 09 Civ. 413, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014)...........................................11

*In re Colgate-Palmolive Co. ERISA Litig.,*
    36 F. Supp. 3d 344 (S.D.N.Y. 2014).......................................................................................9

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998) ...............................................................................................11

*Dupler v. Costco Wholesale Corp.,*
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...................................................................................10

*In re Flonase Antitrust Litig.,*
    291 F.R.D. 93 (E.D. Pa. 2013)................................................................................................9

*Frank v. Eastman Kodak Co,*
    228 F.R.D 174 (W.D.N.Y. 2005)................................................................................8, 9, 12, 13

*Glass v. UBS Fin. Servs.,*
    No. 06 Civ. 4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...........................................11

*Gonzalez v. Pritzker,*
    No. 10 Civ. 3105, 2016 WL 5395905 (S.D.N.Y. Sept. 20, 2016)...........................................7

*Guippone v. BH S & B Holdings, LLC,*
    No. 09 Civ. 1029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ..........................................12

*Henry v. Little Mint, Inc.,*
    No. 12 Civ. 3996, 2014 WL 2199427 (S.D.N.Y. May 23, 2014)...........................................13

*Johnson v. Brennan,*
    No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .........................................13

*Khait v. Whirlpool Corp.,*
    No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)............................................8

*Lizondro-Garcia v. Kefi LLC,*
    300 F.R.D. 169 (S.D.N.Y. 2014) ...........................................................................................14

*Massiah v. MetroPlus Health Plan, Inc.,*
    No. 11 Civ. 5669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ...........................................7

*Munir v. Sunny's Limousine Serv., Inc.*,
  No. 13 Civ. 1581, ECF No. 155 (S.D.N.Y. Jan. 18, 2015)........................................................9

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
  No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .................................................9

*Pearlman v. Cablevision Sys. Corp.*,
  No. 10 Civ. 4992, 2019 WL 3974358 (E.D.N.Y. Aug. 20, 2019) ......................................8, 14

*In re Penthouse Executive Club Comp. Litig.*,
  No. 10 Civ. 1145, 2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013)...........................................13

*Reyes v. Altamarea Grp., LLC*,
  No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ...........................................7

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997)..........................................................................................8

*Scovil v. FedEx Ground Package System, Inc.*,
  No. 10 Civ. 515, 2014 WL 1057079 (D. Me. Mar. 14, 2014) ................................................11

*Sewell v. Bovis Lend Lease, Inc.*,
  No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)......................................10, 12

*In re Smithkline Beckman Corp. Sec. Litig.*,
  751 F. Supp. 525 (E.D. Pa. 1990) ...........................................................................................8

*Thornton v. E. Tex. Motor Freight*,
  497 F.2d 416 (6th Cir. 1974) ...................................................................................................8

*Tiro v. Pub. House Invs., LLC*,
  Nos. 11 Civ. 7679, 11 Civ. 8249, 2013 WL 4830949 (S.D.N.Y. Sept. 10,
  2013) ......................................................................................................................................12

*Will v. Gen. Dynamics Corp.*,
  No. 06 Civ. 698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ..............................................11

*Willix v. Healthfirst, Inc.*,
  No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..............................................10

**OTHER AUTHORITIES**

Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of
  Incentive Payments to Named Plaintiffs in Employment Discrimination Class
  Actions*, 10 Emp. Rts. & Emp't. Policy J. 395 (2006) ..............................................................7

## INTRODUCTION

Class Counsel respectfully requests that the Court approve service payments of $20,000.00 to Named Plaintiffs Carnella Times and Fortune Society ("Fortune"), and $2,500.00 to Named Plaintiff Erving Smith, in recognition of the valuable services each rendered on behalf of the Class.  The proposed service awards are reasonable in light of the relevant precedent, the time and effort the Named Plaintiffs spent in furtherance of this public interest matter, the result they helped obtain, and the lack of evidence of any collusion between counsel.  Defendant Target Corporation ("Target" or "Defendant") does not oppose this Motion.

## FACTUAL BACKGROUND[1]

### I.   Contributions Made by Class Plaintiffs

Plaintiffs Times and Plaintiffs Smith ("Class Plaintiffs") made important contributions to the prosecution and fair resolution of this action on behalf of the Class Members.  *See* Declaration of Ossai Miazad in Support of Plaintiffs' Unopposed Motions for Certification of the Settlement Class and Final Approval of the Class Action Settlement, Approval of Attorneys' Fees and Costs, and Approval of Service Awards ("Miazad Decl.") ¶ 69.  They provided crucial assistance to Class Counsel in the investigation, prosecution, and settlement of the Title VII race and national origin discrimination claims by providing detailed factual information and documents regarding their application processes and criminal background records.  *Id.* ¶ 70.  The factual information provided by Named Plaintiffs provided the backbone for Class Counsel to respond effectively to Defendant's arguments during the mediation and help Counsel educate the mediator about the facts.  *Id.* ¶ 71.

---

[1]   Unless otherwise indicated, all exhibits are attached to the Miazad Declaration.

By participating in this lawsuit, Class Plaintiffs faced the risk that their current or future employers might retaliate against them for their involvement in this high-profile lawsuit. *Id*. ¶ 72. This is particularly true in cases like this one that receive media attention, can be easily located on the internet, and in which the Class Plaintiffs disclosed their criminal history in order to advance the legal claims against Defendant to the benefit of the class. *Id.*

### A.    Contributions Made by Named Plaintiff Times

Plaintiff Times spent years prosecuting her claim successfully at the U.S. Equal Employment Opportunity Commission ("EEOC"), which required Defendant Target to disclose critical evidence that helped lead to the proposed settlement. *Id.* ¶ 74. She also spent years assisting Class Counsel with the investigation of Defendant's hiring practices and participating in the negotiation and mediation process of this case. *Id.* ¶ 76. This settlement has resulted in a massive overhaul of the background check screening process of a large U.S. employer to the benefit of tens of thousands of individuals with criminal background records. Without Plaintiff Times' contributions, the settlement would not have occurred. *Id.* ¶ 78.

In August 2006, Plaintiff Times applied to an overnight stocker position in a new Target store located in South Windsor, Connecticut. *See* ECF No. 1 (Compl.) ¶ 24. Although Times was qualified for the position, Target informed her that it would not offer her employment due to information in her criminal background check. *Id.* ¶¶ 25-29.

On March 6, 2007, Plaintiff Times filed a Charge of Discrimination ("Charge") with the EEOC to complain about Target's denial of her employment based on her criminal background record. *Id.* ¶ 17; Declaration of Lisa Levy ("Levy Decl.") ¶ 4. During the five years of the EEOC's investigation, Plaintiff Times provided documentation to support her claim and was interviewed by EEOC investigators. Miazad Decl. ¶ 74; Levy Decl. ¶ 4. The EEOC

investigators required Target to respond to Plaintiff Times' Charge with extensive data and documentation to answer to her claim of race discrimination based on Target's background check policy.  Miazad Decl. ¶ 74; Levy Decl. ¶ 4.

Based on the evidence that Plaintiff Times and Target provided, the EEOC issued an adverse finding against Target in 2011, finding probable cause to believe that through the application of its background check policy, Target had violated Title VII.  Compl. ¶ 18; Miazad Decl. ¶ 10; Levy Decl. ¶ 4.  Four years later, the EEOC issued Plaintiff Times a Notice of Right to Sue and produced the documentary record that Target had provided to the EEOC.  Miazad Decl. ¶ 11.  Throughout this time period, Plaintiff Times continued to press the EEOC about the status of the matter.  Miazad Decl. ¶ 74; Levy Decl. ¶ 4.

When it became clear that the matter would not be resolved through the EEOC process, Plaintiff Times did not give up, but sought out a private class action firm.  Miazad Decl. ¶ 75; Levy Decl. ¶ 4.  Plaintiffs Times secured representation by Class Counsel in 2015, and negotiations with Target began.  Miazad Decl. ¶ 75.  Plaintiff Times assisted Class Counsel with its investigation of Target's hiring practices and potential remedies to eliminate any future disparate impact on African-American and Latino applicants.  *Id.* ¶ 76.  Plaintiff Times was available to Class Counsel throughout the process as they reviewed the voluminous record Target produced to the EEOC, as well as the hundreds of pages of documents produced by Target to Class Counsel during the informal exchange of discovery to facilitate the dispute resolution process about its hiring practices, screening processes, and applicant data.  *Id.*

Plaintiff Times also assisted Class Counsel during the intensive, ongoing negotiation period.  *Id.* ¶ 77.  The Parties participated in eight meetings with Target's counsel, the mediator, or both that took place over a period of 15 months.  *Id.* ¶¶ 26-27, 77.  Throughout that time,

Plaintiff Times stayed up to date on the negotiations and provided input. *Id.* ¶ 77. At the end of 2017, the Parties had an agreement in principle and finalized the settlement. *Id.* Plaintiff Times reviewed the settlement terms and provided feedback. *Id.* Plaintiff Times also assisted Class Counsel with preparing the Complaint. *Id.* Plaintiff Times' assistance to Class Counsel in the investigation, prosecution, and settlement of the claims in this case were critical to the success of this settlement. *Id.* ¶ 78.

### B.     Contributions Made by Named Plaintiff Smith

Plaintiff Smith also provided an important service to the class as a Class Representative by adding value to the case. Miazad Decl. ¶ 79. In early 2014, Plaintiff Smith applied to a stocker position in a Target store located in Pittsburgh, Pennsylvania. *See* ECF No. 1 (Compl.) ¶ 31. Although Smith was qualified for the position, Target informed him that it would not offer him employment due to information in his criminal background check. *Id.* ¶ 32-36.

After his denial of employment, Plaintiff Smith reached out to Class Counsel about his claims. Miazad Decl. ¶ 80. He then made himself available during the investigation period and the negotiation and mediation process to speak to Class Counsel and assist with the fact investigation as well as settlement negotiations. *Id.* As a putative Class Representative, Plaintiff Smith provided helpful factual information, within a more recent period, in order for Class Counsel to respond effectively to Defendant's arguments during the mediation and help Counsel educate the mediator about the facts. *Id.* Plaintiff Smith also assisted Class Counsel with preparing the Complaint. *Id.* Plaintiff Smith's assistance also was critical, including by illustrating to Target another real-world example of how the problems with its hiring process extended beyond the experience (and claims) of Plaintiff Times. *Id.*

II.   **Contributions Made by Named Plaintiff Fortune Society**

Plaintiff Fortune is a New York non-profit community-based organization serving New York City via locations in Queens, New York, and Harlem, New York; with a mission to support successful reentry from incarceration and promote alternatives to incarceration, thus strengthening the fabric of our communities.  Declaration of JoAnne Page in Support of Plaintiffs' Unopposed Motion for Named Plaintiff Service Awards ("Page Decl.") ¶ 3. With over 50 years' experience, Fortune is now one of the nation's leading innovators in advocacy and public policy, while providing holistic and expanding services to over 7,000 individuals impacted by the justice system annually.  *Id.*  Fortune offers a variety of services to help motivated job seekers begin their careers and advance professionally.  *Id.* ¶ 5.

Fortune participated in this case because its mission is thwarted by large employers like Target with overly restrictive and burdensome criminal background check policies.  *Id.* ¶ 6. Target's hiring policies affect Fortune's clients who apply and are denied employment or are deterred from applying because of Target's policies.  *Id.* Target's hiring Screening Process impedes Fortune's ability to carry out the core aspect of its mission to advance the employment attainment of the formerly incarcerated population in New York, and more broadly throughout the United States.  *Id.*  Plaintiff Fortune has provided critical insight and guidance on the impact of these polices on African American and Latino applicants.  Miazad Decl. ¶ 81.

Fortune became a party to this case as a distinguished advocacy organization and on behalf of its formerly incarcerated members, who are also Class Members.  Page Decl. ¶ 7.  As a named Plaintiff, Fortune has pressed upon the Parties the racial disparate impact faced by African-American and Latino applicants due to overly restrictive and burdensome criminal background check policies of large retail employers like Target.  Miazad Decl. ¶ 82.  Employees

of Fortune met with Class Counsel regularly throughout the investigation, negotiation, and mediation processes.  Page Decl. ¶ 8; Miazad Decl. ¶ 83.  Fortune's President and CEO, JoAnne Page, attended the first settlement conference that laid the foundation for future discussions. Page Decl. ¶ 8; Miazad Decl. ¶ 84.  During that session, Ms. Page effectively conveyed Fortune's interest in this matter and the connection between Target's criminal background check policies and its mission in increasing employment opportunities for individuals with criminal background records. Page Decl. ¶ 8.  Staff members of Fortune, including Dr. Ronald Day and Danielle Rosario, Esq., participated directly in the mediation and settlement negotiations in the many months that followed.  *Id.* ¶ 9.  Fortune also reviewed the I/O's interim guidelines, and offered detailed guidance throughout the I/O validation process regarding the analysis of mitigating circumstances to reduce exclusionary periods for applicants to ensure the most people with justice involvement are being considered for jobs within the least restrictive timeframes.  *Id.* ¶ 8.

Based on the information and insights provided by Fortune during the settlement process, the Parties were able to craft detailed programmatic relief, including a Priority Hiring and promotion process at Target stores; hiring independent consultants to revise and validate Target's guidelines; and pipeline, re-entry support programming.  *See* Miazad Decl. ¶ 81.  Without the contributions of Fortune informing Class Counsel and Defendant Target during the settlement, the innovative structured relief would not have been possible.  *Id.*

## III.    <u>Notice and the Reaction of the Class.</u>

The Court-approved Notice that was sent to Class Members informed them of the service payments that Plaintiffs request.  Ex. C (Declaration of Sara Schwermer-Sween ("Schwermer-Sween Decl.")) at Exs. 1-2 (Notices).  Only one Class Member submitted an objection to the

settlement (the "Objector"), objecting *inter alia* to the service awards for Class Plaintiffs, but not

to Fortune. *Id.*, Ex. 4 (Objection).  The Objector argued that the award to Class Plaintiffs Times

and Smith is not comparable to any other plaintiff who pursued any action against Target and

explained that he also took action against Target by filing a discrimination complaint with the

New York State Division of Human Rights.  *Id.*

## ARGUMENT

**I.** **The Service Payments Are Reasonable and Should Be Approved.**

The service payments that Named Plaintiffs request are reasonable given the significant

contributions that they made to the investigation, negotiation, and resolution of the case.  Courts

acknowledge that named plaintiffs play a crucial role in bringing justice to those who would

otherwise be hidden from judicial scrutiny.

"Service awards are common in class action cases and serve to compensate plaintiffs for

the time and effort expended in assisting the prosecution of the litigation, the risks incurred by

becoming and continuing as a named plaintiff, and any other burdens sustained by the plaintiffs."

*Gonzalez v. Pritzker*, No. 10 Civ. 3105, 2016 WL 5395905, at *5 (S.D.N.Y. Sept. 20, 2016)

(citing *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y.

Aug. 16, 2011)).  Service awards further the important purpose of compensating plaintiffs for

their efforts and the time they spend assisting in the prosecution of the litigation.  *Massiah v.*

*MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20,

2012); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of*

*Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp.

Rts. & Emp't. Policy J. 395 (2006).

Courts have also awarded service payments based on the need to encourage litigants to bring class actions, furthering the public policy underlying the statutory scheme.  *See Thornton v. E. Tex. Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those [employees] who protest and help to bring rights to a group of employees who have been the victims of [employer wrongdoing].");  *see also In re Smithkline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving $5,000 award because named plaintiffs "rendered a public service" and "conferred a monetary benefit" on the shareholder class).

In examining the reasonableness of service payments, courts consider several factors including: (1) the time and effort expended by the plaintiffs in assisting the prosecution of the case or in bringing added value; (2) the ultimate recovery in vindicating statutory rights; (3) the personal risk incurred by the plaintiffs; and (4) the potential for collusion between the parties. *See Frank v. Eastman Kodak Co*, 228 F.R.D 174, 187 (W.D.N.Y. 2005) (collecting cases stating this standard); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) (same).  Each of those factors support Court approval of the service awards here.

### A.    Class Plaintiffs and Fortune Spent Significant Time On and Brought Significant Value to This Settlement, While Facing Significant Risk.

Courts recognize that service awards are "important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiff." *Pearlman v. Cablevision Sys. Corp.*, No. 10 Civ. 4992, 2019 WL 3974358, at *7 (E.D.N.Y. Aug. 20, 2019) (quoting *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (internal citations omitted)).

Named Plaintiffs bring important factual knowledge to employment class actions, including information about employer hiring policies and practices that affect applicants. *See Frank*, 228 F.R.D. at 187 (recognizing that plaintiffs are the "primary source of information concerning the claims"); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 354 (S.D.N.Y. 2014) (recognizing efforts of plaintiffs, including time spent reviewing draft pleadings and motions, searching for and producing documents, reviewing filings, and regular communications with counsel); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) (awarding service payments where plaintiffs met with counsel, reviewed documents, formulated case theory, identified and located other class members, and attended court proceedings).

Here, Class Plaintiffs contributed significant time and effort to the case by: providing Class Counsel with factual information regarding application and criminal background record processes; providing relevant documents in their possession; assisting during the years of investigation and negotiation periods; helping Class Counsel to prepare for the eight separate meetings with Target's counsel, the mediator, or both; and being available to speak to Class Counsel to assist their factual investigation and settlement negotiations. Similarly, Fortune was an instrumental part of settlement discussions and the crafting of programmatic relief.[2] These efforts on behalf of the Class support the requested service payments. *See, e.g.*, *Munir v. Sunny's Limousine Serv., Inc.*, No. 13 Civ. 1581, ECF No. 155, at 3 (S.D.N.Y. Jan. 18, 2015) (approving service awards of $30,000 to one named plaintiff and $10,000 each to five other named

---

[2]      Courts recognize that organizational plaintiffs who are "actively engaged and willingly available to assist Class Counsel with the effective prosecution of the case," deserve awards for their service to the successful outcome of class actions—like Fortune here. *See In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 106–07 (E.D. Pa. 2013) (approving service awards of $10,000 to each organizational plaintiff).

plaintiffs); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *15 (S.D.N.Y. Apr. 16, 2012) (granting service awards of $15,000 and $10,000 to named plaintiffs where they "provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel"); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (finding service awards of $30,000, $15,000 and $7,500 to various plaintiffs to be reasonable); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245–46 (E.D.N.Y. 2010) (finding enhancement awards of $25,000 to one plaintiff and $5,000 to a second plaintiff reasonably based on the participation of the two individuals in the action).

### B.     The Ultimate Recovery Supports the Requested Payments.

Plaintiffs brought this case because of the importance it has for the hundreds of African-American and Latino class members who were denied jobs at Target because of the company's unfair background check policies. Equal and fair access to employment for racial minorities is a cornerstone of our civil rights law. The settlement levels the playing field for African-American and Latino applicants at Target and gives them the opportunity to fairly compete for positions without being subjected to a discriminatory criminal background check screening process.

The settlement will provide far-reaching, class-wide programmatic relief to correct the hiring practices at Target and support applicants with criminal histories in securing employment. First, the settlement provides class members with hourly, non-exempt entry-level jobs at Target stores through a Priority Hiring process. Class members can also opt for consideration for a leadership role and automatically advance to the second stage of the interview process for positions that have a supervisory component. If class members are not qualified for such priority hiring, they may be eligible to receive a monetary award in lieu of employment. Second, the

Parties have jointly selected experts, paid for by Target, to work together as independent consultants to revise and validate Target's guidelines for developing substantial programmatic relief remedying the hiring practices at issue in this case.  Third, Target has agreed to make a financial contribution of $600,000 to nonprofits that provide re-entry support to individuals with criminal history records, with the goal of supporting these organizations' efforts in developing a pipeline of qualified applicants who have successfully completed work ready programs.

Given the breadth and importance of the programmatic and class member relief, and the role the named Plaintiffs had in securing that settlement, the service awards of $20,000.00 and $2,500.00 are reasonable and fair.  Courts routinely approve service payments equal to or greater than the payments requested here.  *See, e.g.*, *Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413, 2014 WL 4415919, at *5, *12 (W.D. Wis. Sept. 5, 2014) (approving incentive awards of $10,000 and $25,000 for, *inter alia*, submitting to discovery and participating in numerous settlement discussions); *Beesley v. Intl. Paper Co.*, No. 06 Civ. 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (approving incentive awards of $15,000 and $25,000 where named plaintiffs responded to document requests, reviewed pleadings, assisted in discovery, and submitted to lengthy depositions); *Will v. Gen. Dynamics Corp.*, No. 06 Civ. 698, 2010 WL 4818174, at *4 (S.D. Ill. Nov. 22, 2010) (approving $25,000 incentive awards where named plaintiffs "assisted with discovery, submitted to lengthy depositions, and were involved in the settlement process"); *Scovil v. FedEx Ground Package System, Inc.*, No. 10 Civ. 515, 2014 WL 1057079, at *6–7 (D. Me. Mar. 14, 2014) (collecting cases awarding incentive awards and awarding incentive awards of between $10,000 and $20,000, for a total of $130,000). *See also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming approval of $25,000 service award in ERISA class action from settlement fund of $14 million); *Glass v. UBS Fin. Servs.*, No.

06 Civ. 4068, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 "enhancement" to each of four named plaintiffs).

###   C.       Plaintiffs Times and Smith Assumed Risk in Participating in This Case.

In the workplace context, where workers are often rejected for employment if they are considered "trouble makers," employees who sue employers are particularly vulnerable to retaliation.  *See Frank*, 228 F.R.D. at 187-88 (purpose of representative fee includes compensation for the multiple retaliation risks borne in filing suit against former employer); *see also Sewell*, 2012 WL 1320124, at *14 (citation omitted) (recognizing that plaintiffs "fac[e] potential risks of being blacklisted as 'problem' employees").  "Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny, and that '[service] awards are particularly appropriate in the employment context' where 'the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers.'"  *Tiro v. Pub. House Invs., LLC*, Nos. 11 Civ. 7679, 11 Civ. 8249, 2013 WL 4830949, at *11 (S.D.N.Y. Sept. 10, 2013) (quotations omitted).

Although Plaintiffs Times and Smith had been rejected for employment based on Target's overly restrictive and burdensome criminal background check policies, they nevertheless faced the risk that their current or future employers might discriminate or retaliate against them for being involved in this case if and when the case and settlement becomes public knowledge.

Even where, as here, there has been no actual retaliation, Named Plaintiffs merit recognition for assuming the potential risk by connecting their names to the case.  *See Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28,

2011) ("where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members"); *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that [defendant] has or will take retaliatory action towards either [named plaintiff] or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

As entry-level applicants, Plaintiffs Times and Smith are especially vulnerable because they are at the bottom of the workplace hierarchy. *See* Miazad Decl. ¶ 72. Where, as here, "a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, [service] awards are singularly appropriate." *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014).

### D. The Multiple Mediations Overseen by an Experienced Mediator Reduces the Risk of Collusion Between the Parties.

Additionally, the service payments are reasonable in light of the extensive mediation period that the Parties engaged in, which was overseen by a third-party mediator, Professor Lynn Cohn from Northwestern University Pritzker School of Law, which supports a finding that the Parties were not in collusion during the settlement process. Miazad Decl. ¶ 25.

Courts find collusion less likely when settlement negotiations are conducted by a third-party mediator. *In re Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145, 2013 WL 1828598, *2 (S.D.N.Y. Apr. 30, 2013) (granting preliminary approval of proposed settlement reached through negotiations that involved formal mediation, finding that the "assistance of two experienced mediators" supports the conclusion that the proposed settlement is non-collusive, as a settlement "reached with the help of third-party neutrals enjoys a 'presumption that the settlement achieved meets the requirements of due process'") (quoting *Johnson v. Brennan*, No.

10 Civ. 4712, 2011 WL 4357376, *8 (S.D.N.Y. Sept. 16, 2011)).  Where there is no evidence of
"any collusion between counsel," such a finding supports awarding service payments.
*Pearlman*, 2019 WL 3974358, at *7 ("These awards, along with the rest of the Settlement, were
negotiated under Mediator Holwell's supervision, which carries a presumption that the amounts
are reasonable and the result of arm's-length negotiations."); *Lizondro-Garcia v. Kefi LLC*, 300
F.R.D. 169, 180 (S.D.N.Y. 2014) (granting service awards where they "do not appear to have
been the result of any collusion between counsel").

Here, the Parties agreed to, and participated in, ongoing, intensive mediation sessions
over a period of 15 months.  Miazad Decl. ¶ 26.  From March 2016 to June 2017, the Parties
attended eight meetings with Target's counsel, the mediator, or both in Chicago, Illinois, and
New York, New York.  *Id.* ¶ 27.

The Parties reached an agreement in principle and finalized the Settlement Term Sheet in
October 2017.  *Id.* ¶ 29.  Over the following six months, the Parties negotiated a detailed
settlement agreement, and on March 26, 2018, the Parties executed the Settlement Agreement.
*Id.*  Mediator Cohn oversaw the process until the agreement was finalized.  *Id.*  Such extensive
negotiation and mediation overseen by a third-party mediator demonstrates that the settlement
was not the product of collusion between the Parties and supports the service awards requested
here.

### E.     The Court Should Reject the Lone Objection.

Finally, Class Plaintiffs' service awards are reasonable even when the Objector's
concerns are considered.  As noted, Class Plaintiffs' service awards are reasonable in light of the
work they have performed on behalf of the Class, and the recovery, and are consistent with what
other Courts have approved.  *See supra* section I(a)-(b).   While the Objector first argues that

these service awards are unreasonable in light of the Class Members individual recoveries, the three service awards constitute only 1.14% of the settlement's monetary component, which is a more than reasonable percentage.  Miazad Decl. ¶ 86.  Further, the Objector's argument ignores the substantial additional value achieved by Class Plaintiffs in the form of programmatic relief, priority hiring, funding to programs designed to advance the employability of individuals with criminal records and ensuring that Target would have to pay the costs of the mediation, settlement administration, and the validation of Target's hiring process.  The Objector cites to his own complaint with the New York State Division of Human Rights, but that complaint did not lead to this settlement, and thus is not a basis to increase his award or to doubt the work performed by Class Plaintiffs.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court approve service payments of $20,000.00 each to Named Plaintiffs Carnella Times and Fortune, and $2,500.00 to Named Plaintiff Erving Smith, in recognition of the valuable services they rendered on behalf of the Class.

Dated:  October 9, 2019
      New York, New York

Respectfully submitted,
By:
*/s/ Ossai Miazad*
**OUTTEN & GOLDEN LLP**
Adam T. Klein
Ossai Miazad
Lewis Steel
Christopher M. McNerney
685 Third Avenue, 25th Floor
New York, New York 10017
Tel.: (212) 245-1000

**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**
Sherrilyn Ifill
Samuel Spital

40 Rector Street, 5th Floor
New York, New York 10006

Coty Montag
700 14th Street NW, Suite 600
Washington, DC 20005

*Attorneys for Plaintiffs and the Settlement Class*

## **<u>CERTIFICATION OF SERVICE</u>**

I hereby certify that on **October 9, 2019**, a copy of the foregoing document was filed electronically and service made by certified mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by certified mail for anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

*/s/ Ossai Miazad*
Ossai Miazad