**OUTTEN & GOLDEN LLP**
Adam T. Klein
Ossai Miazad
Lewis Steel
Christopher M. McNerney
685 Third Avenue, 25th Floor
New York, New York 10017

**NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.**
Sherrilyn Ifill
Samuel Spital
40 Rector Street, 5th Floor
New York, New York 10006

Coty Montag
700 14th Street NW, Suite 600
Washington, DC 20005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| CARNELLA TIMES and ERVING SMITH, on behalf of themselves and all others similarly situated, and THE FORTUNE SOCIETY, INC., | : : : : : | |
| Plaintiffs, | : : | **No. 18 Civ. 02993** |
| -against- | : : | |
| TARGET CORPORATION, | : : | |
| Defendant. | : : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
## MOTION FOR ATTORNEYS' FEES AND COSTS

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

    I.      Investigation and Settlement Negotiations. ............................................. 3

    II.    Implementing the Programmatic Relief and Determining the Class List .............. 4

    III.   Settlement Administration and Final Approval ...................................................... 7

ARGUMENT ....................................................................................................................... 8

    I.      Plaintiffs Are Justified in Seeking Their Requested Fees and Costs ..................... 8

          A.   Plaintiffs Are the Prevailing Party and Entitled to Reasonable Fees
              and Costs ........................................................................................................ 9

          B.   Plaintiffs Obtained a Substantial Result for the Class ................................. 10

          C.   The Parties Separately Negotiated Fees and Costs ...................................... 11

          D.   No Class Member Objected to the Fee Request. ......................................... 12

    II.    Time Expended by Class Counsel Was Reasonable and Should Be
          Compensated ......................................................................................................... 13

    III.   Public Policy Goals Support the Attorneys' Fees Award Sought Here ............... 17

    IV.   Class Counsel are Entitled to Reimbursement of Costs. ..................................... 19

CONCLUSION .................................................................................................................. 21

## TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*,
  374 F.3d 66 (2d Cir. 2004)...................................................................... 9

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
  369 F.3d 91 (2d Cir. 2004)...................................................................... 20

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
  522 F.3d 182 (2d Cir. 2008)............................................................... 13, 15

*Bazignan v. Team Castle Hill Corp.*,
  No. 13 Civ. 8382, 2015 WL 1000034 (S.D.N.Y. Mar. 5, 2015) ...................... 15, 16

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) .............................................................. 16

*Buckhannon Bd. And Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*,
  532 U.S. 598 (2001).............................................................................. 10

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...................................................... 13

*deMunecas v. Bold Food, LLC*,
  No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ......................... 18

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980).............................................................................. 18

*Donnelly v. Peter Luger of Long Island, Inc.*,
  No. 13 Civ. 1377, 2014 WL 12769046 (E.D.N.Y. Nov. 13, 2014) ...................... 13

*El v. Se. Penn. Transp. Auth. (SEPTA)*,
  479 F.3d 232 (3d Cir. 2007).................................................................... 21

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)............................................................. 18

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)......................................................................... 20, 21

*Gonzalez v. Pritzker*,
  No. 10 Civ. 3105, 2016 WL 5395905 (S.D.N.Y. Sept. 20, 2016)....................... 11

*Grace v. Ludwig*,
    484 F.2d 1262 (2d Cir. 1973)..........................................................................18

*Grant v. Martinez*,
    973 F.2d 96 (2d Cir. 1992)..............................................................................10

*Griggs v. Duke Power Co.*,
    401 U.S. 424 (1971)........................................................................................19

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)....................................................................................9, 10

*Hooper Assocs., Ltd. V. AGS Computs, Inc.*,
    548 N.E.2d 903 (N.Y. 1989)...........................................................................12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003).............................................................19

*Kassim v. City of Schenectady*,
    415 F.3d 246 (2d Cir. 2005)..............................................................................9

*Kelly v. Brooklyn Events Ctr., LLC*,
    No. 17 Civ. 4600, 2019 WL 4316125 (E.D.N.Y. Sept. 10, 2019)...................14

*Lyte v. Sara Lee Corp.*,
    950 F.2d 101 (2d Cir. 1991)..........................................................................9, 10

*Millea v. Metro-North R.R. Co.*,
    658 F.3d 154 (2d Cir. 2011)............................................................................13

*Moore v. Houlihan's Rest., Inc.*,
    No. 07 Civ. 3129, 2011 WL 2470023 (E.D.N.Y. May 10, 2011).....................20

*Newman v. Piggie Park Enters., Inc.*,
    390 U.S. 400 (1968)..........................................................................................9

*Norwest Fin., Inc. v. Fernandez*,
    121 F. Supp. 2d 258 (S.D.N.Y. 2000).............................................................15

*Nunez v. Francis Deli Grocery*,
    No. 13 Civ. 4894, 2015 WL 1963630 (S.D.N.Y. Apr. 30, 2015).....................15

*Olsen v. Cty. of Nassau*,
    No. 05 Civ. 3623, 2010 WL 376642 (E.D.N.Y. Jan. 26, 2010)............19, 20, 21

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
    No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010).........................16

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)...........................................................................................13

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...........................................................................................18

*Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.*,
    297 F.3d 253 (3d Cir. 2002)...............................................................................17

*Robinson v. Metro-North Commuter R.R.*,
    267 F.3d 147 (2d Cir. 2001)...............................................................................18

*Rozell v. Ross-Holst*,
    576 F. Supp. 2d 527 (S.D.N.Y. 2008)................................................................16

*Sand v. Greenberg*,
    No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)..............................18

*Shapiro v. JPMorgan Chase & Co.*,
    Nos. 11 Civ. 8331, 11 Civ. 7961, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................11

*Sturgill v. United Parcel Serv., Inc.*,
    512 F.3d 1024 (8th Cir. 2008) ...........................................................................19

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)...........................................................17, 18

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) .....................................................................11, 12

*Times v. Target Corp.*,
    No. 18 Civ. 2993, 2018 WL 3238821 (S.D.N.Y. May 14, 2018)........................15

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
    369 F.3d 34 (2d Cir. 2004)................................................................................12

*United States v. City of N. Y.*,
    No. 07 Civ. 2067, 2016 WL 3417218 (E.D.N.Y. June 16, 2016)........................12

*United States v. City of New York*,
    No. 07 Civ. 2067, 2013 WL 5542459 (E.D.N.Y. Aug. 30, 2013) ...............19, 20, 21

*Vulcan Soc'y of Westchester Cty., Inc. v. Fire Dep't of City of White Plains*,
    533 F. Supp. 1054 (S.D.N.Y. 1982)...............................................................20, 21

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ..........................13

**STATUTES**

42 U.S.C. § 2000E-5(K) ........................................................................................... 1, 8, 9, 20

# INTRODUCTION

In connection with Plaintiffs' Unopposed Motion for Certification of the Settlement Class and Final Approval of the Class Action Settlement ("Motion for Final Approval"), filed simultaneously with this motion, Class Counsel, Outten & Golden LLP ("O&G") and NAACP Legal Defense and Educational Fund, Inc. ("LDF") (hereafter, "Class Counsel") respectfully move this Court for an award in the amount of $1,900,000.00, representing less than their total combined attorneys' fees and costs incurred in successfully prosecuting and settling claims involving significant social justice issues. *See* 42 U.S.C. § 2000e-5(k).[1]

As described in the Final Approval Motion, this settlement provides far-reaching, class-wide programmatic and Class Member relief, achieved after four years of extensive investigation, negotiations, and work with industrial organization ("I/O") experts to ameliorate the discriminatory hiring practices alleged in this class action litigation.  Simply put, the work of Class Counsel and the resulting Settlement will change the way Target performs criminal background checks for job applicants, ensuring that its screen is narrowly tailored so only applicants whose criminal records are job-related and recent enough, as determined by leading experts in the field, will face disqualification.  Class Counsel were able to secure class-wide programmatic relief tailored to the violations alleged, and significant individual relief offering Class Members priority hiring for jobs at Target Stores, or in the event that they do not seek the job, monetary compensation through a $1,200,000.00 monetary fund.  Ex. A (Agreement) § 3.4(B)(3).  This Settlement will allow tens of thousands of African-American and Latino applicants to fairly compete for jobs at Target Stores.  Unlike in most employment settlements,

---

[1]     Unless otherwise indicated, all exhibits are attached to the Declaration of Ossai Miazad in Support of Plaintiffs' Unopposed Motions for Certification of the Settlement Class and Final Approval of the Class Action Settlement, Approval of Attorneys' Fees and Costs, and Approval of Service Award ("Miazad Decl.").

this figure will not be reduced by attorneys' fees or costs.  *Id.* § 3.7; Miazad Decl. ¶ 87.  Target also agreed to make a separate financial contribution of $600,000.00 to nonprofits that provide re-entry support to individuals with criminal history records.  Ex. A (Agreement) § 3.5.  Finally, Target agreed to pay all costs for mediation, settlement administration, and the still ongoing work of the I/O experts.  *Id.* §§ 3.1(B), 3.1(c), 3.3(K), 3.6.

Counsel's fees and costs recovery of $1,900,000.00 was negotiated separately from the significant injunctive and monetary relief achieved for the Class.  *Id.* § 3.7.  Even so, the request is less than Plaintiffs' fees and costs to date, which also do not account for Class Counsels' ongoing work in this matter including through a year of monitoring and eventually further revision to Target's criminal history review process (its "Screening Process").

Accordingly, Class Counsel respectfully move the Court for an award of $1,900,000.00 in attorneys' fees and costs.  For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and costs they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken, the significant societal interest in encouraging the employment of individuals with criminal histories which this settlement addresses, and the substantial result achieved in this case.

## STATEMENT OF FACTS

The steps Class Counsel took to achieve this settlement were lengthy and the issues complex.  The proposed resolution took exceptional measures to achieve, requiring Class Counsel to devote a massive amount of time and resources, and entailed significant risk.  This type of risk is what the fee-shifting provision in Title VII of the Civil Rights Act of 1964 ("Title VII") is meant to reward.  Title VII's public policy against discrimination depends upon "private attorney generals," such as Class Counsel.  Class Counsel took up this call and worked to address

2

the pernicious effects of criminal background checks on African-American and Latino applicants.

## I.   <u>Investigation and Settlement Negotiations.</u>

This action began over ten years ago, when Plaintiff Carnella Times (born McDade) filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") based on Target's denial of employment due to her criminal history, on March 2, 2007.  *See* ECF No. 1 (Compl.) ¶ 7.  On September 14, 2015, after years of investigation, and a probable cause finding, the EEOC issued Plaintiff Times a Notice of Right to Sue and produced documents that Target had provided to the EEOC.  Miazad Decl. ¶ 11.  On November 17, 2015, Class Counsel sent Target a letter on behalf of Plaintiffs inviting Target to discuss the claims.  *Id*. ¶ 12.

Over the last four and a half years, Class Counsel have expended significant effort to achieve the Settlement.  Class Counsel engaged in a substantial investigation that included a thorough investigation of Target's hiring practices and potential remedies to eliminate any disparate impact on African-American and Latino applicants.  *Id*. ¶¶ 9-24.  As part of this effort, Class Counsel: (i) regularly met and communicated with organizational Plaintiff Fortune Society in order to understand the challenges that Target's Screening Process imposed on individuals with criminal histories (*id.* ¶ 18); (ii) conducted in-depth interviews of potential Class Members, including Plaintiffs (*id.* ¶ 19); (iii) conducted research regarding the claims (including the validity of Target's Screening Process), defenses, and damages; (*id.*); and obtained and reviewed the EEOC investigation file, consisting of hundreds of pages of documents and data (*id.* ¶ 20).

After Plaintiffs initiated engagement with Target, the Parties engaged in a robust exchange of informal discovery to facilitate the dispute resolution process.  *Id.* ¶ 21.  Target

produced voluminous records about its Screening Process and applicant data.  *Id.*  Class Counsel engaged experts to assess and analyze Target's Screening Process and data, as well as potential business necessity justifications for Target's Screening Process.  *Id.* ¶ 24.  For example, after reviewing Target's background check process the Parties then sat down for a daylong Q&A with the administrators of Target's policy about its provisions and implementation.  *Id.* ¶ 23.

With a well-informed understanding of the scope of the legal issues and underlying facts, the Parties agreed to mediate the dispute with the assistance of an experienced class action mediator, Lynn Cohn, a professor at Northwestern Pritzker School of Law (the "Mediator").  *Id.* ¶ 25.  Because the liability issues and hiring processes were complex, the Parties understood that one mediation session would not suffice.  *Id.* ¶ 26.  Instead, the Parties agreed to, and participated in, ongoing, intensive mediation sessions over a period of 15 months.  *Id.*  From March 2016 to June 2017, the Parties attended multiple mediation sessions in Chicago, Illinois, and New York, New York, and otherwise were in steady communication.  *Id.* 27.  Throughout the entire process, the Parties also held private conferences with the Mediator to facilitate the settlement discussions.  *Id.* ¶ 28.  After more than two years of mediations and negotiations, on March 26, 2018, the Parties executed the Settlement Agreement.  *See* Ex. A (Agreement).  On May 14, 2018, the Court preliminarily approved the Settlement Agreement.  *See* ECF No. 24.

## II.    <u>Implementing the Programmatic Relief and Determining the Class List.</u>

In the approximately one and a half years since the Court preliminarily approved the Settlement, Class Counsel has spent a tremendous amount of time working with Target and with the I/O experts to implement the programmatic relief to which the Parties agreed.

Pursuant to the Settlement Agreement, Target provided the I/O experts with all relevant and accessible information relating to Target's guidelines and practices relating to the use of

criminal history background checks in hiring.  Ex. A (Agreement) § 3.3(C), (G); Miazad Decl. ¶ 35.  First, the I/O experts conferred with the Parties as part of the Scoping Phase of their work.  Ex. A (Agreement) § 3.3(E); Miazad Decl. ¶ 36.  The Scoping Phase included: developing a detailed scope of work and budget proposal; identifying relevant data, documents, and other information necessary to conduct their work; and providing a timeline for the work completion, documented in a Scope of Work and Budget Report ("SOW").  Ex. A (Agreement) §§ 3.3(D), (E); Miazad Decl. ¶ 36.  The Parties were given the opportunity to comment on the proposed SOW, and the I/O experts considered the Parties' comments and provided a second SOW.  Ex. A (Agreement) §§ 3.3 (E); Miazad Decl. ¶ 36.

Once the SOW was established, the I/O experts researched and drafted Interim Criteria, which are the revised adjudication guidelines and revised Screening Process for Target's evaluation of criminal history records of job applicants, informed by validation techniques set forth in the Society for Industrial Organizational Psychology ("SIOP") Principles, the EEOC's Uniform Guidelines on Employee Selection Procedures ("Uniform Guidelines"), and/or other applicable professional standards.  Ex. A (Agreement) §§ 3.3(B), (G).  The I/O experts worked with the Parties to design and develop properly validated Interim Criteria by reviewing relevant job descriptions, job analysis study reports, and other materials provided by Target; interviewing an internal Target subject matter expert regarding the relevant jobs; interviewing an internal Target subject matter expert regarding Target's criminal history background check policies and practices; conducting job-observation site visits at two Target stores; and convening weekly telephone conference calls with counsel for the Parties.  Miazad Decl. ¶ 39.

On September 10, 2018, the I/O experts delivered to the Parties the proposed Interim Criteria.  *See* ECF No. 29 (status letter to Court).  Pursuant to the Settlement Agreement, thirty

days later, on October 10, 2018, the Parties submitted their comments on the proposed interim criteria. *Id.*; Ex. A (Agreement) § 3.3(G)(3); Miazad Decl. ¶ 41. The I/O experts reviewed the Parties' comments and revised the proposed Interim Criteria, and thirty days later, on November 9, 2018, the experts delivered second Interim Criteria to the Parties. Ex. A (Agreement) § 3.3(G)(4); Miazad Decl. ¶ 42; ECF No. 31. Pursuant to the Settlement Agreement, fourteen days later, the Parties submitted their disputes with the proposed Second Interim Criteria to the Mediator. Ex. A (Agreement) § 3.3(G)(6); Miazad Decl. ¶ 43; ECF No. 32 (Joint Letter to the Court). The Mediator made recommendations regarding resolution to the I/O experts on January 30, 2019. *See* Ex. A (Agreement) § 3.3(G)(6); Miazad Decl. ¶ 44; ECF No. 32. The Parties promptly responded to the Mediator's recommendations outlining the recommendations which they continued to dispute. Ex. A (Agreement) § 3.3(G)(8); Miazad Decl. ¶ 45; ECF No. 32. On February 18, 2019, the I/O experts submitted their final Interim Criteria. Miazad Decl. ¶ 46; ECF No. 32.

On May 31, 2019, based on the final Interim Criteria, Target produced to Class Counsel a list of all applicants who it had determined were eligible as Class Members. Ex. A (Agreement) § 4.1(A); Miazad Decl. ¶ 48. Pursuant to the Settlement Agreement, for applicants who Target determined would not have met the Interim Criteria for hiring eligibility at the time of application, Target provided Class Counsel the reason for and evidence of the applicant's disqualification based on the Interim Criteria. Ex. A (Agreement) § 4.1(B); Miazad Decl. ¶ 52. Class Counsel thereafter had twenty days to challenge the determination. Ex. A (Agreement) § 4.1(B). Class Counsel carefully reviewed every Class Member against the Interim Criteria to confirm that Target had correctly determined Class Member eligibility, and eligibility for Group A or Group B. Miazad Decl. ¶ 52. On June 19, 2019, the Parties met and conferred regarding

disputes about the class list.  *Id.* ¶ 53.  The Parties disputed certain aspects of the Interim Criteria, and raised their disputes with the I/O experts, who provided clarification.  *Id.* ¶ 53.  On July 18, 2019, Target submitted the final Class List to the administrator.  Ex. C (Declaration of Sara Schwermer-Sween ("Schwermer-Sween Decl.")) ¶ 10.  Thus, in the last 16 months since the Court preliminary approval, Class Counsel worked diligently to implement the programmatic relief—revising and validating Target's guidelines for use of criminal history records in making its hiring decisions.

Beyond this work, Class Counsel will continue to be engaged with the implementation of the Settlement as the Parties work to develop the Final Criteria.  Miazad Decl. ¶ 55.  For a period of one year, during which the Interim Criteria are implemented, the I/O experts will continue to monitor and explore further refinements to develop the Final Criteria.  Ex. A (Agreement) § 3.3(H).  During this time, the I/O experts will provide the Parties and the Mediator with quarterly status reports.  *Id.* § 3.3(J).  At the end of the one-year period, the Parties will have an opportunity to review and comment on the proposed Final Criteria, with any conflicts negotiated with a mediator.  *Id.* § 3.3(H)(3)(5).  In the event of a continuing impasse, Class Counsel shall be permitted to present their position to Target's Chief Legal Officer, and may request an in-person meeting with Target's Chief Legal Officer together with the I/O experts to resolve any remaining outstanding issues with the implementation of the Settlement Agreement.  *Id.* § 3.3(5).  Having been involved in similar iterative processes in other settlement, Class Counsel understand that this is a substantial (and important) commitment.  Miazad Decl. ¶ 56.

## III.    Settlement Administration and Final Approval.

In addition to working to implement the programmatic relief and determine the Class List, Class Counsel have spent substantial time and effort in helping to administer the Settlement.

*Id.* ¶ 57.  This included interacting with the Settlement Administrator, and finalizing the

Settlement Notices, Claim Forms, and website.  *Id.*; ECF No. 32.  As of October 9, 2019, Class

Counsel have fielded over 81 inquires from Class Members.  Miazad Decl. ¶ 57.

Moreover, Class Counsel have expended significant time, unreported on the fee summary

that only goes through September 22, 2019, drafting the final approval papers (including the

motion for final approval, the motion for service awards for the Named Plaintiffs, and this

motion for attorneys' fees).  *Id.* ¶ 58.

Class Counsel anticipate that they will incur further fees in preparing for the Fairness

Hearing.  *Id.* ¶ 59.  Moreover, in Class Counsel's experience, once the Settlement has been

finally approved, and relief is provided, they will undoubtedly spend significant additional time

fielding Class Members' questions and interacting with the Settlement Administrator to resolve

those questions (beyond the time involved in developing the Final Criteria).  *Id.* ¶ 60.

Further, the Parties recently learned that Target inadvertently omitted over 40,000

individuals from the list of potential Class Members subject to the application of the Interim

Criteria.  *Id.* ¶ 61; *see* ECF No. 37.  The Parties worked to promptly provide proposed revised

Notices and Claim Forms and a revised Notice Period to the Court for approval.  Miazad Decl. ¶

62; *see* ECF No. 37.  On October 4, 2019, the Court approved the Parties' revised Notices and

Claim Forms and revised Notice Period.  ECF No. 38.  Class Counsel will incur additional fees

in interacting with the Settlement Administrator to provide notice to the inadvertently omitted

Class Members and fielding their questions, among other work.  Miazad Decl. ¶ 63.

## **ARGUMENT**

## I.   **Plaintiffs Are Justified in Seeking Their Requested Fees and Costs.**

Title VII permits courts to award prevailing plaintiffs attorneys' fees and costs.  *See* 42

U.S.C. § 2000e-5(k).  Here, Class Counsel are entitled to reasonable attorneys' fees, under Title

VII and the terms of the Parties' agreement, to compensate them for their work on behalf of the Class negotiating excellent, robust relief, to the benefit of thousands of minority applicants.

    **A.**    **Plaintiffs Are the Prevailing Party and Entitled to Reasonable Fees and Costs.**

The purpose of the attorneys' fees award provision of Title VII is to permit plaintiffs with valid claims to attract effective representation and thereby encourage private enforcement of civil rights statutes, to the benefit of the public as a whole. *See Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (attorneys' fees enacted to encourage pursuance of judicial relief); *see also Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) (fee awards provide "'a meaningful opportunity to vindicate'" policies (quoting S. Rep. No. 94-1011, at 2 (1976)). Fee shifting is intended to attract qualified counsel in cases where the anticipated monetary recovery may otherwise be too small to incentivize private representation. *See Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (fee statute enacted in part to incentivize the prosecution of low-injury claims).

Title VII's fee-shifting provision states that "[i]n any action or proceeding under this subchapter [Title VII] the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs[.]" 42 U.S.C. § 2000e-5(k). A party is a "prevailing party" when it alters the legal relationship with the other party by obtaining an enforceable judgment against it. *See Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 78 (2d Cir. 2004) ("It is well-settled that a plaintiff prevails when actual relief on the merits of a claim materially alters the legal relationship between the parties by modifying the defendants' behavior in a way that directly benefits the plaintiff."). The Second Circuit has expressly found that a Title VII settlement can entitle a settling plaintiff to prevailing party status. *See Lyte v. Sara Lee Corp.*, 950 F.2d 101, 104-05 (2d Cir. 1991) (approving of award of

fees to counsel as a result of settlement, while remanding to district court as to amount); *see also*

*Buckhannon Bd. And Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598,

604 (2001) (holding that "settlement agreements enforced through a consent decree may serve as

the basis for an award of attorney's fees").

Here, there is no question that Plaintiffs are the prevailing party.  Plaintiffs sought

injunctive relief to fix the flawed and discriminatory criminal background check screening

process that imported the huge disparities in arrest and conviction rates for African Americans

and Latinos into Target's hiring practice.  That is precisely what the settlement targets by

appointing two well-qualified I/O Psychologists to develop validated procedures with regard to

Target's hiring practices.  The settlement also provides significant individualized relief by

providing Class Members with Priority Hiring or monetary compensation, and a Pipeline Project

aimed at addressing the collateral employment consequences of a criminal record.  Further, the

Parties' agreement provides for final judgment and continuing jurisdiction by the Court to

"facilitate[e] the Settlement and other relief pursuant to this Agreement."  Ex. A (Agreement) ¶

4.4(B); *see also* ¶ 6.9 (providing for continuing Court jurisdiction).

Such relief targeted at the discriminatory practices at issue is precisely what Plaintiffs'

Complaint sought, *and* achieved.

## B.    Plaintiffs Obtained a Substantial Result for the Class.

 "Where a plaintiff has obtained excellent results, his attorney should recover a fully

compensatory fee."  *Hensley*, 461 U.S. at 435; *accord Grant v. Martinez*, 973 F.2d 96, 101 (2d

Cir. 1992).

Here, Plaintiffs respectfully posit that they achieved "excellent results" and are entitled to

be "fully compensated."  *Grant*, 973 F.2d at 101.  The relief provided in the Settlement is

groundbreaking and involves a complete overhaul of Target's Screening Process.  Based on the

substantial work performed by counsel for the Parties and the I/O experts to date, over 16,469

Class Members (roughly 60%) who were previously denied employment by Target because of

their criminal records are now eligible for employment.[2]  Miazad Decl. ¶ 54.  In addition to the

other negotiated relief, this result fully supports the recovery Class Counsel seek.

Very few other plaintiff-side firms or non-profit organizations would have the resources,

interest, and experience to pursue the claims at issue here.  Class Counsel are leaders in

addressing the discriminatory use of criminal histories to deny job opportunities to African-

American and Latino applicants, and have successfully achieved some of the few other federal

settlements which provided job applicants relief for violation of their Title VII rights based on

their criminal histories.  *See id.* ¶¶ 6-8; Declaration of Coty Montag ("Montag Decl.") ¶¶ 10-11,

14.  In Class Counsel's estimation, this settlement well exceeds even those settlements when

considering its comprehensive programmatic and individual relief.  *Cf. Gonzalez v. Pritzker*, No.

10 Civ. 3105, 2016 WL 5395905, at *2 (S.D.N.Y. Sept. 20, 2016).

### C. The Parties Separately Negotiated Fees and Costs.

Further supporting the reasonableness of the fee award sought here is the fact that the

amount was negotiated separately from the programmatic and class member relief.  *See* Ex. F

(Barclay's Transcript) at 5:17-6:9 (approving fees in criminal background discrimination case as

reasonable where fees were "separately negotiated" "[s]o it did not impact the remedy that the

class is receiving"); *Shapiro v. JPMorgan Chase & Co.*, Nos. 11 Civ. 8331, 11 Civ. 7961, 2014

WL 1224666, at *8 (S.D.N.Y. Mar. 24, 2014) (finding settlement fair where attorneys' fees and

costs were negotiated "only *after* the parties had structured and agreed to the terms of the

---

[2]       This figure will increase with the notices mailed to omitted potential Class Members.

[s]ettlement"); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("[U]nlike common fund cases, where attorneys' fees can erase a considerable portion of the funds allocated for settlement, the fees were negotiated separately and after the settlement amount had been decided, thus considerably removing the danger that attorneys' fees would unfairly swallow the proceeds that should go to class members."); *United States v. City of New York*, No. 07 Civ. 2067, 2016 WL 3417218, at *2 (E.D.N.Y. June 16, 2016) ("More important, the $9.5 million in attorneys' fees are not being taken from the class common fund at all.  Instead, the attorneys' fees here were negotiated separately from the class recovery and are being paid directly by Defendant.").  As the Second Circuit has explained, "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law[,]" as it is in this case, under New York law.  *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004); *cf. Hooper Assocs., Ltd. V. AGS Computs, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989).

Through the Parties' agreement, Class Counsel may seek, and Target has agreed to pay, Plaintiffs' fees, costs, and expenses of up to $1,900,000.  Ex. A (Agreement) § 3.1(A).  Through that same agreement, Class Counsel ensured that Class Members' recoveries will not be diminished by Class Counsel's fees award, and that Target would separately bear the substantial costs of mediation, settlement administration, and the implementation of programmatic relief *including* the payment of two well-respected I/O Psychologists—all to the benefit of the Class. *Id.* §§ 1.35, 1.36, 3.1(A)-(C), 3.3(K), 3.4(B), 3.5(A), 3.6, 3.8

### D.     No Class Member Objected to the Fee Request.

While one Class Member submitted an objection, *no* Class Member has objected to the requested attorneys' fees or expense reimbursement.  Miazad Decl. ¶ 93.  The Settlement

Agreement, which the Court preliminarily approved, provides that Class Counsel will petition

the Court for $1,900,000.00 for payment of attorneys' fees and costs.  Ex. A (Agreement)

§ 3.1(A).  In addition, the Court-approved Notice that was sent to all Class Members stated that

"Class Counsel will ask the Court to approve payment of up to $1,900,000.00 for their attorneys'

fees and costs."  Ex. C (Schwermer-Sween Decl.) at Ex. 1 (Notice) ¶ 12, Ex. 2 (Notice) ¶ 10.

After reviewing this information, no Class Member objected to the fee request.  The lack of

objections supports the reasonableness of the requested award and weighs in favor of approving

it.  *See Donnelly v. Peter Luger of Long Island, Inc.*, No. 13 Civ. 1377, 2014 WL 12769046, at

*8 (E.D.N.Y. Nov. 13, 2014); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL

5492998, at *10 (S.D.N.Y. Oct. 2, 2013); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d

172, 183 (W.D.N.Y. 2011) (citing cases).  Further, no Class Members have opted out of the

settlement.  Ex. C (Schwermer-Sween Decl.) ¶ 22.

## II.      Time Expended by Class Counsel Was Reasonable and Should Be Compensated.

While the parties have separately negotiated a fees and costs amount that Target has

agreed to pay, the fees and costs incurred by Class Counsel further support the propriety of this

award.  *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ("[T]he lodestar method

yields a fee that is presumptively sufficient to achieve th[e] objective [of inducing attorneys to

take on civil rights cases.]"); *see also Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir.

2011) (lodestar provides a "presumptively reasonable fee" (quoting *Arbor Hill Concerned

Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008))).

As described above, Class Counsel expended significant effort to achieve the settlement.

Class Counsel engaged in a substantial investigation that included a thorough investigation of

Target's hiring practices and potential remedies to eliminate any disparate impact on African-

American and Latino applicants.  After initially engaging with Target, Class Counsel participated in ongoing, intensive mediation and negotiation sessions for a period of over two years. Thereafter, Class Counsel spent significant time working to implement the programmatic relief agreed to in the Settlement.

Class Counsel seek compensation for the over four years of work expended on achieving this Settlement.  The accompanying attorney declarations set forth the hours of work and billing rates used to calculate the lodestar.  As described in those declarations, Counsel and their staffs have devoted a total of approximately 2829 hours to this action, resulting in an aggregate lodestar of $1,888,673.10.  *See* Miazad Decl. ¶ 92; *see also id.* ¶ 89-91 & Exs. D-E (O&G fees and costs summaries); Montag Decl. ¶¶ 20, 22 & Exs. A-B; Declaration of Lisa Levy ("Levy Decl.") ¶¶ 2, 11-13.  Counsel also have dispersed $211,199.32 in costs necessarily expended to litigate the case.  Miazad Decl. ¶ 92.  Thus, Class Counsel's requested fee of $1,900,000 represents $191,397.42 less than their actual lodestar and costs to date.  *Id.*  These hours are more than reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  *Id.* ¶ 94; Montag Decl. ¶ 21; Levy Decl. ¶ 10.

O&G are experienced, highly-regarded members of the plaintiffs' employment bar with extensive expertise in the areas of class actions and complex litigation involving discrimination claims, including criminal history claims like those at issue here.  *Kelly v. Brooklyn Events Ctr., LLC*, No. 17 Civ. 4600, 2019 WL 4316125, at *2 (E.D.N.Y. Sept. 10, 2019) (O&G attorneys are "experienced class action and employment lawyers with good reputations among the class action and employment bars and significant experience in litigating criminal history discrimination matters"); *see* Miazad Decl. ¶¶ 6-8 (listing representative class cases O&G has successfully

prosecuted).  LDF is the nation's first and foremost civil rights organization, and has litigated

class action lawsuits to help secure jobs and employment rights for tens of thousands of citizens

confronted by unfair employment practices.  *See* Montag Decl. ¶ 2.  Greater Hartford Legal Aid,

Inc. is a non-profit law firm that provides legal services to low-income individuals, and

advocating for persons who experience unlawful barriers to employment is an important part of

the firm's mission.  *See* Levy Decl. ¶ 3.[3]  The Court has already found, in appointing Plaintiffs'

Counsel as Class Counsel, that Class Counsel are "experienced" and "well-versed in the

prosecution of complex employment class actions."  *Times v. Target Corp.*, No. 18 Civ. 2993,

2018 WL 3238821, at *1-2 (S.D.N.Y. May 14, 2018).

Courts in this Circuit have repeatedly approved hourly rates like Class Counsel's as

reasonable.  *See* Miazad Decl. ¶¶ 98-99.  Further, the rates sought by O&G's attorneys are

routinely paid by clients seeking hourly attorney work, including on individual criminal history

discrimination matters.  *See id.* ¶¶ 100-101; Ex. G (Declaration of Adam T. Klein) ¶¶ 5-11

(explaining that O&G attorneys are regularly paid at the same or higher rates); *see Norwest Fin.,*

*Inc. v. Fernandez*, 121 F. Supp. 2d 258, 262-63 (S.D.N.Y. 2000) (rejecting challenge to

reasonableness of fee request where counsel provided declaration indicating that client was

"billed on the basis of services provided at fixed hourly rates which were charged at [counsel's]

usual and customary rates"); *see also Nunez v. Francis Deli Grocery*, No. 13 Civ. 4894, 2015

WL 1963630, at *7 (S.D.N.Y. Apr. 30, 2015) (attorney's "customary hourly rate" among factors

to be considered in determining lodestar (quoting *Arbor Hill*, 522 F.3d at 186-87 n.3)); *Bazignan*

---

[3]     Although Greater Hartford Legal Aid did not seek appointment as Class Counsel, the
Settlement Agreement provides that Class Counsel's fee request shall include the lodestar for
attorneys at Greater Hartford, Legal Aid, Inc., who represented Ms. Times during the EEOC
proceedings, and subsequently have been involved in settlement negotiations, as explained in the
Declaration of Lisa Levy.  Ex. A (Agreement) § 3.1(A); *see also* Levy Decl. ¶ 4, 9.

*v. Team Castle Hill Corp.*, No. 13 Civ. 8382, 2015 WL 1000034, at *4 (S.D.N.Y. Mar. 5, 2015) (same); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (actual rates charged to clients provides "strong evidence of what the market will bear" (collecting cases)).

At all times, Class Counsel used a small team of core attorneys in order to minimize duplication of efforts and maximize billing judgment, and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to perform it effectively.  Miazad Decl. ¶ 95.  In addition, Class Counsel's contemporaneous time records were carefully reviewed and duplicative work, as well as *de minimis* time billed by attorneys and staff who had little participation in the action, was removed (for example, O&G proactively removed any attorneys or staff who worked less than five hours on this matter).  *Id.* ¶ 96.

However, the requested fee is not based solely on time and effort already expended.  It is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future.  *Id.* ¶ 97.  In Class Counsel's experience, overseeing the final steps of the settlement process will require an ongoing substantial commitment.  *Id.*; *see Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time.").  Class Counsel anticipate that they will incur significant additional fees in interacting with the Settlement Administrator and, specific to this

case, in providing notice to the inadvertently omitted Class Members and fielding their questions (in effect, an entire second round of notice). *Id.* ¶ 97. Class Counsel's lodestar will also grow as they continue to finalize the settlement process, prepare for the Fairness Hearing, and handle Class Member questions after approval. *Id.* Most significantly, this Settlement provides that Class Counsel will continue to work with the I/O experts for one year after approval to develop Final Criteria for Target's Screening Process—a substantial undertaking. *Id.*; Ex. A (Agreement) § 3.3(H).

As outlined above and in the declarations and exhibits attached to the Miazad Decl. as Exhibits D-E, Class Counsel's time was spent on tasks necessary to the successful prosecution of this complex Title VII class action. The lawyers involved in negotiating the settlement collectively have decades of experience with Title VII litigation and settlements, and all of that experience was brought to bear to achieve the results of this case. Miazad Decl. ¶¶ 4-6, 8. Even so, Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work. *Id.* ¶ 95.[4] Accordingly, Class Counsel's lodestar is reasonable.

**III.    Public Policy Goals Support the Attorneys' Fees Award Sought Here.**

Public policy considerations also weigh in favor of granting Class Counsel's request. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage

---

[4]    It is standard practice for multiple lawyers to work on a case, particularly a class action and settlement of this scope and complexity, and to seek attorneys' fees. *See Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.*, 297 F.3d 253, 272 (3d Cir. 2002) (internal quotation marks omitted) (multiple fee awards appropriate because "magnitude of the case mandated the help of numerous attorneys for both parties[]" and staffing was appropriate given "complexity and specialized medical knowledge necessary for the proper presentation of this case").

experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F.

Supp. 2d 393, 399 (S.D.N.Y. 1999). Courts have recognized that fee awards serve the dual

purposes of encouraging "private attorney[s] general" to seek redress for violations and

discouraging future misconduct of a similar nature. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S.

326, 338-39 (1980).

Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum*

*Co. v. Shutts*, 472 U.S. 797, 809 (1985) (many plaintiffs "would have no realistic day in court if a

class action were not available"). Courts look with favor upon awarding attorneys' fees in class

actions that "encourage the vigilance of private attorneys general to provide corporate therapy

protecting the public investor who might otherwise be victimized." *Grace v. Ludwig*, 484 F.2d

1262, 1267 (2d Cir. 1973), *cert denied*, 416 U.S. 905 (1974). An award of attorneys' fees

ensures that plaintiffs' claims will be heard. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174,

189 (W.D.N.Y. 2005). If courts denied sufficient attorneys' fees "no attorneys . . . would likely

be willing to take on . . . small-scale class actions." *Id.*; *see also deMunecas v. Bold Food, LLC*,

No. 09 Civ. 440, 2010 WL 3322580, at *8-9 (S.D.N.Y. Aug. 23, 2010) (same, citing cases);

*Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (attorneys'

fees are meant to "encourage members of the bar to provide legal services to those whose wage

claims might otherwise be too small to justify the retention of able, legal counsel"). In this case,

public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee.

This settlement directly furthers the purpose of Title VII to remove "employment obstacles, not

required by business necessity, which create built-in headwinds and freeze out protected groups

from job opportunities and advancement." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d

147, 160 (2d Cir. 2001) (internal quotation marks omitted). It ensures that tens of thousands of

minority applicants will be "hir[ed] on the basis of job qualifications" and not their criminal records.  *Griggs v. Duke Power Co.*, 401 U.S. 424, 434 (1971).  Granting attorneys' fees pursuant to the fee-shifting provisions of Title VII recognizes the important public policy goals achieved through this litigation.

## IV.   **Class Counsel are Entitled to Reimbursement of Costs.**

While Class Counsel are not separately seeking costs in addition to the $1,900,000.00 award, Class Counsel have also incurred $211,199.32 in out-of-pocket expenses.  Miazad Decl. ¶ 92.  The award sought is also intended to compensate Class Counsel for those expenses, which further supports the reasonableness of the award when costs are considered in addition to Class Counsel's lodestar.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted).  Here, Class Counsel's expenses were incidental and necessary to the representation of the Class, and are in line with costs charged to individual clients who pay out-of-pocket.  Miazad Decl. ¶ 91 & Ex. E.

**Attorney Travel**.  Class Counsel had to travel to Chicago, Illinois to attend multiple mediation sessions.  *See id.* Ex. E.  These travel costs included reasonable expenses for hotels, meals, train and airfare.  Courts routinely approve such travel costs.  *See, e.g.*, *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008) (approving award of travel costs under Title VII as consistent with Supreme Court precedent); *United States v. City of New York*, No. 07 Civ. 2067, 2013 WL 5542459, at *13-14 (E.D.N.Y. Aug. 30, 2013) (approving award of, *inter alia*, travel costs and meals under Title VII); *Olsen v. Cty. of Nassau*, No. 05 Civ. 3623, 2010 WL 376642, at *8 (E.D.N.Y. Jan. 26, 2010) (in Title VII action, approving "travel-related

expenses . . . [as] routinely recoverable" (collecting cases)); *Vulcan Soc'y of Westchester Cty., Inc. v. Fire Dep't of City of White Plains*, 533 F. Supp. 1054, 1067 (S.D.N.Y. 1982) ("Congress wanted plaintiffs to be paid the costs of vindicating their rights, and the need for depositions, travel, telephone expenses, and other similar costs is as clearly supportable as the need to use counsel.") (citing 122 Cong. Rec. 35, 123 (1976))).

**Computerized Legal Research**. Class Counsel seek costs for Westlaw and/or LexisNexis legal research.  Such costs were necessary to the litigation, are recoverable, and have been approved by the Second Circuit.  *See, e.g.*, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) (observing that "the use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, and that in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award"); *see also City of New York*, 2013 WL 5542459, at *12-13 (awarding costs for online research in Title VII action (collecting cases)).

**Expert Costs**.  Class Counsel's fees paid to experts were necessary to achievement of the Settlement and are expressly recoverable under Title VII.  42 U.S.C. § 2000e-5(k); *see also Moore v. Houlihan's Rest., Inc.*, No. 07 Civ. 3129, 2011 WL 2470023, at *8 (E.D.N.Y. May 10, 2011) ("Expert fees are specifically recoverable as costs under Title VII.").  The fees paid to the experts in this case were necessary and reasonable because Plaintiffs had to engage experts to assess and analyze Target's Screening Process and data, as well as Target's business necessity defense.  *Compare Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 162 (1982) (Burger, J., concurring in part, dissenting in part) (success of "[r]espondent's class claim on behalf of unsuccessful applicants for jobs with petitioner" depended on "an analysis of statistics

concerning petitioner's hiring patterns"), *with El v. Se. Penn. Transp. Auth. (SEPTA)*, 479 F.3d 232, 247 (3d Cir. 2007) (finding employer's policy was consistent with business necessity when plaintiff "chose neither to hire an expert to rebut SEPTA's experts on the issue of business necessity nor even to depose SEPTA's experts" and explaining that "[h]ad [plaintiff] produced evidence rebutting SEPTA's experts, this would be a different case").

**Postage, Copying and Printing.**  Class Counsel incurred postage costs for communications, including with the Court and opposing counsel.  Such costs were necessary to the litigation and are routinely reimbursed.  *See, e.g.*, *City of New York*, 2013 WL 5542459, at *12, *14 (postage and copying are compensable under Title VII); *Olsen*, 2010 WL 376642, at *8 (same for photocopies).

**Telecommunication Costs.**  Class Counsel incurred phone and fax costs, as well as costs associated with maintaining a case website.  These costs were necessary for Class Counsel to communicate with Class Members, opposing counsel, and the Court, and are recoverable.  *See, e.g.*, *City of New York*, 2013 WL 5542459, at *12, *14 (awarding under Title VII phone and fax costs); *Vulcan Soc'y*, 533 F. Supp. at 1067 (awarding phone costs).

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant their Motion for Attorneys' Fees and Costs, and enter an Order awarding attorneys' fees and costs in the amount of $1,900,000.00.

Dated: October 9, 2019
       New York, New York

                                         Respectfully submitted,

                                         */s/ Ossai Miazad*
                                         **OUTTEN & GOLDEN LLP**
                                         Ossai Miazad
                                         Adam T. Klein

21

Lewis Steel
Christopher M. McNerney
685 Third Avenue, 25th Floor
New York, New York 10017
Tel.: (212) 245-1000

**NAACP LEGAL DEFENSE FUND**
Sherrilyn Ifill
Samual Spital
40 Rector Street, 5th Floor
New York, New York 10006
Tel.: (212) 965-2200

Coty Montag
700 14th Street NW, Suite 600
Washington, DC 20005
Tel.: (202) 682-1300

*Attorneys for Plaintiffs and the Settlement
Class*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on **October 9, 2019**, a copy of the foregoing document was filed electronically and service made by certified mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by certified mail for anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

<u>*/s/ Ossai Miazad*</u>
Ossai Miazad